No. 74,157

STATE OF KANSAS, *Appellant*, v. MICHAEL FARMER, *Appellee*.

(909 P.2d 1154)

Opinion filed January 26, 1996.

*Kevin C. Fletcher*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Kenneth M. Carpenter*, of Carpenter, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The State appeals the dismissal of a rape charge after a preliminary hearing pursuant to K.S.A. 1994 Supp. 22-3602(b)(1). The main issue on appeal involves the appellate standard to be applied when reviewing a magistrate court's decision dismissing a criminal complaint based upon a finding of no probable cause at the conclusion of a preliminary hearing. For the reasons set forth below, we reverse and remand with directions to reinstate the charge of rape.

Because the case comes to us in an unusual procedural posture, the facts giving rise to the charge of rape as well as the procedural history of the case are set forth in some detail. The complaint charging rape alleged that the defendant, Michael Farmer, had unlawfully, feloniously, and willfully had sexual intercourse with T.D., the defendant's sister-in-law, without her consent and at a

time when T.D. was overcome with force or fear. In the alternative, the complaint also charged that the defendant had sexual intercourse with T.D. and that T.D. was incapable of giving consent because of mental deficiency or disease, which condition was known or reasonably apparent to the defendant.

## PRELIMINARY HEARING BEFORE MAGISTRATE

At the preliminary hearing, several witnesses were called and testified. R.D., the mother of the defendant's wife, testified that after T.D. returned from a visit with her sister (P.F.) and the defendant, P.F.'s husband, in Scranton, Kansas, T.D. called asking for help. When R.D. arrived at T.D.'s apartment, T.D. was acting nervous and scared. Initially, T.D. told R.D. that the defendant had "hugged" her. Then she told her mother that the defendant had raped her. R.D. then took T.D. to the hospital in Topeka and called the police.

T.D. testified that while visiting her sister and the defendant, she was sitting with the defendant in the camper in back of the defendant's house when the defendant unbuttoned her pants. She told him to stop, but the defendant took off his overalls and put a finger in her vagina. He then forced her over to the bed in the camper, took off her clothes, and engaged in sexual intercourse. She testified that the intercourse hurt her and that she was very scared.

Under cross-examination, T.D. could not remember the exact day the rape occurred. She remembered, however, that she made her sister and the defendant take her to her apartment the next day. The following day, she called her mother to come and get her. T.D. also was confused as to whether the defendant had attempted to rape her later that same evening.

Jeanne Frieman, a psychologist, testified that she examined T.D. on four separate occasions. According to Frieman, T.D. is mildly retarded, with an I.Q. in the high 50's to lower 60's range. In Frieman's opinion, T.D. did not understand the concept of sexual intercourse well enough to be able to consent to it.

P.F. testified that late one evening while in her kitchen, she looked out into the back yard and saw the defendant in the camper

with T.D. She could see that the defendant was on top of T.D. and was moving up and down. She walked to the camper, looked in, and saw the defendant with his overalls down lying on top of T.D. P.F. screamed and hit the camper. She then went to the house, got the keys to the camper, unlocked the door, and went in.

P.F. testified that when she entered the camper, the defendant was coming out of the bathroom door. She shoved him up against the side of the camper and yelled at him. According to P.F., T.D. was sitting on the side of the bed smoking a cigarette during the time P.F. was screaming at the defendant.

John Gaines of the Osage County Sheriff's Department testified that when he interviewed T.D., she indicated that she had had sexual intercourse with the defendant "ten times." He also stated that he had trouble understanding T.D., and so he arranged for an interview to be conducted later with Detective Hoffmeier of the Topeka Police Department. Gaines testified that he was also present for that second interview and that again he and Hoffmeier had trouble understanding T.D. because she seemed unable to comprehend times and dates.

Gaines also stated that the clothing analysis and rape kit performed on T.D. showed no evidence of seminal fluid in T.D.'s vaginal or rectal area or on T.D's clothing. Gaines testified that T.D. and her mother had told him that T.D. had not bathed or changed clothes since the alleged rape.

The defendant also called Larry Lemon of the Kansas Attorney General's office. Lemon testified that he had interviewed P.F. 6 months after the alleged incident and that P.F. had told him that T.D. had come to visit 2 or 3 days prior to the incident. The defendant had been in the Veterans Administration Hospital at the time. According to Lemon, P.F. told him that she had come home a day or two later to find that her husband had checked out of the hospital and that he and T.D. had gotten drunk together. Lemon stated that P.F. had told him that the defendant wanted T.D. to live at the farm with them. Lemon also stated that P.F. had told him that when she entered the camper during the incident, T.D. called her a "bitch" and told her that she did not love the defendant.

The magistrate judge dismissed the complaint at the conclusion of the preliminary hearing, stating:

"I'm going to grant the motion to discharge and more particularly on the Kansas Bureau of Investigation's report that a rape kit was conducted and Officer Gaines' testimony about the clothing that was taken and the family members that were present at the hospital saying that these are the same clothing, that the victim had never taken a bath or anything during the—prior to this examination and the defendant is discharged."

## APPEAL TO DISTRICT COURT

The State appealed the dismissal of the complaint to the district court. District Judge Thomas H. Sachse conducted a de novo review of the evidence presented at the preliminary hearing and determined that the evidence was sufficient to cause a person of ordinary prudence and caution to entertain a reasonable belief that a crime was committed and that the defendant had committed the crime. The court ordered the defendant bound over for trial, which was scheduled to be heard before another district judge.

## MOTION TO DISMISS BEFORE DISTRICT JUDGE

Prior to trial the defendant filed a motion to dismiss for lack of jurisdiction, arguing that District Judge Sachse's decision was erroneous because he applied a de novo standard of review instead of what the defendant claimed was the appropriate standard, one of abuse of discretion. Upon hearing the motion, District Judge Jules V. Doty agreed that Judge Sachse had erred in applying a de novo standard of review instead of an abuse of discretion standard. Judge Doty then reviewed all of the case history, including evidence not presented at the preliminary hearing, and determined that the district magistrate had not abused his discretion. The court concluded that it had no jurisdiction to arraign the defendant and dismissed the case.

## ANALYSIS AND DECISION

In an appeal by the prosecution from an order discharging the defendant for lack of probable cause, the reviewing court follows the same standard for weighing the evidence as did the magistrate in the preliminary examination. *State v. Bockert*, 257 Kan. 488, 491, 893 P.2d 832 (1995). In *State v. Martinez*, 255 Kan. 464, 465, 876

P.2d 617 (1994), which involved an appeal to this court from a dismissal of a criminal complaint at the conclusion of the preliminary hearing based upon a finding of no probable cause, this court held:

"We conduct a de novo review of the evidence when considering the trial court's preliminary hearing probable cause finding. *State v. Starks*, 249 Kan. 516, 617, 820 P.2d 1243 (1991). The single issue is whether there was probable cause to believe Martinez (defendant) had committed the crime of theft. We reverse the trial court and remand the case with directions to reinstate the charges."

The function of a judge or magistrate at a preliminary hearing is not to determine the wisdom of the prosecuting attorney's decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. *State v. Puckett*, 240 Kan. 393, Syl. ¶ 3, 729 P.2d 458 (1986). The sole question before the judge or magistrate at the conclusion of a preliminary hearing is the same question an appellate court is faced with upon de novo review: whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. See 240 Kan. 393, Syl. ¶ 1.

In this case the court erred by applying an abuse of discretion standard. The correct standard of review is de novo. Given the unusual procedural posture of this case, with two reviews by two separate district judges of the magistrate's probable cause determination at the conclusion of the preliminary hearing, one might conclude that it would be appropriate to end our discussion at this point. This conclusion might seem appropriate because the first district judge to review this case applied the correct de novo standard and set the matter for trial. However, the State's appeal comes to us under the provision of K.S.A. 1994 Supp. 22-3602(b)(1) "[f]rom an order dismissing a complaint." Because the second district judge dismissed based not only upon what he considered to be error on the part of the first district judge, but also upon evidence adduced at the preliminary hearing, we must apply the de novo standard in this appeal. The sole question upon review is whether the preliminary hearing evidence is sufficient to establish

probable cause that a crime has been committed and that the defendant committed the crime.

We have set forth the evidence adduced at the preliminary hearing above. Applying the appropriate de novo standard of review, we conclude that probable cause has been established that a crime has been committed and that the defendant committed the crime charged. The dismissal of the charge of rape is reversed, and we remand the case with directions to reinstate the charge.

Reversed and remanded with directions to reinstate the charge.

LARSON, J., concurring: I agree with the result reached by the majority but write separately because I would reverse the decision of the district judge dismissing the case for lack of jurisdiction simply because there is no statutory right or constitutional authority upon which the decision could be based.

We held in *State v. Kleen*, 257 Kan. 911, Syl. ¶ 2, 896 P.2d 376 (1995), that "K.S.A. 1994 Supp. 20-302b(c) provides for a de novo appeal before a district judge from a district magistrate judge *'in accordance with the limitations and procedure presented by law.'* (Emphasis added.)"

In this case such an appeal was properly taken. District Judge Sachse considered the appeal as a matter of right on the record under the provisions of K.S.A. 1994 Supp. 22-3602(c). He ruled that probable cause existed and bound Farmer over for trial. This decision of Judge Sachse is not appealable to the Court of Appeals or the Supreme Court, nor is it appealable to a different district judge in the same judicial district.

We need not write about whether the correct standard of review was an abuse of discretion standard or a de novo standard when in fact Judge Doty had no standard or right of review of Judge Sachse's decision at all.

The trial court should have summarily denied Farmer's motion to dismiss and held it attempted to raise an issue which the trial court had no right to consider.

SIX, J., joins in the foregoing concurring opinion.