No. 80,137

STATE OF KANSAS, *Appellant,* v. TIM HARRIS, *Appellee.*

(975 P.2d 227)

Opinion filed January 22, 1999.

*John P. Wheeler, Jr.,* county attorney, argued the cause, and *Lois K. Malin,* assistant county attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellant.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State appeals from the district judge's dismissal of a criminal complaint which charged the defendant with one count each of sale of cocaine and sale of marijuana and two counts each of conspiracy to sell cocaine. We reverse the trial court regarding the counts of sale of cocaine and marijuana and remand the case with directions to reinstate the charges. We affirm the trial court's dismissal of the conspiracy counts.

At the preliminary examination, three witnesses testified for the State: Detectives Larry Watson and Candice McCarthy of the Garden City police department and a police informant, Jose Morales. A summary of their testimony follows. In June 1997, the Garden City police department made arrangements with Jose Morales to conduct controlled drug buys on three separate occasions from the

defendant, Tim Harris. Morales agreed to participate in the drug buy in exchange for having a pending prosecution dropped regarding a charge of possession of marijuana.

On June 5, 1997, Detective Watson met with Morales and had Morales place a call to Harris regarding a marijuana buy. Watson listened to the conversation as the arrangements were made on a cellular telephone that had a small recorder attached.

After the telephone call, Morales told Watson that he was to go to an address in a trailer park in Garden City to make the buy. Watson provided Morales with money for the buy and a microcassette recorder for recording the transaction. Detective McCarthy drove Morales to the residence. Detective Watson followed in his car. Watson observed the back door of the residence, while McCarthy watched the front door. Morales was inside the residence for only a few minutes.

When Morales returned to McCarthy's car, he handed McCarthy the marijuana he had purchased in the residence. Morales told the detectives that after obtaining the marijuana from Harris, he had asked Harris if Harris had any cocaine for sale. Harris had said he did not have any cocaine at that time but he could have some later in the day.

On the afternoon of the same day, Morales again used the cellular phone with the recorder attached to call Harris and arrange a drug buy. Watson heard Morales ask, "Do you have it?" Satisfied by what he heard of Morales' telephone conversation, Watson directed Morales to set up a cocaine purchase.

As before, McCarthy rode with Morales to the residence where Morales had earlier purchased marijuana, and Watson followed behind. Morales was again provided with a small tape recorder. Morales was in the residence for approximately 1 minute. He returned from the residence with a substance that field tested positive as cocaine. Morales told the officers that Harris had been asleep on the couch and that Harris' wife had sold him the cocaine.

On June 16, 1997, following the same telephone procedure, Morales arranged to make a second cocaine buy from Harris. Watson and McCarthy conducted surveillance while Morales was in the residence. Approximately 10 minutes after Morales entered the

residence, a man in a white vehicle arrived in the area and got out of his car. Five minutes later, Morales exited the residence and returned to his personal vehicle. Morales told McCarthy that a "Chinese guy with a shaved head" had brought the cocaine to the residence and he had purchased the cocaine from the man while Harris watched. The cocaine was field tested and logged into evidence.

A complaint was filed on July 29, 1997, charging Harris with one count each of sale of cocaine and sale of marijuana, two counts of conspiracy to sell cocaine, and two counts of no drug tax stamp. A preliminary examination was held October 2, 1997. The no drug tax stamp charges in the complaint were dismissed by the State prior to the hearing due to an insufficient quantity of drugs.

After the State had presented its evidence, the judge stated:

"[B]asically, all [the State has] is a conclusion that's incapable of being tested. . . . I have testimony from the detective that Mr. Morales called Mr. Harris. I don't know how it was established that that was Mr. Harris on the other end of the phone. There is no foundation for it. I thought, well, perhaps they got that from Mr. Morales, but Mr. Morales didn't testify as to any of that. And then I thought, well, perhaps from prior contacts. Well, I can't say everybody knows that Tim Harris has prior convictions because that doesn't make any difference, and that wasn't [presented]. Then I thought, well, maybe Mr. Harris ID'd himself on the phone and a combination of all these things, that's how we know that Mr. Harris was on the other line, just other than an officer sitting there saying, Mr. Harris was on the other end of the line, and that officer wasn't really even involved in the conversation. I don't know the how. I don't know the foundation for it, it's totally unsupported evidence. And I'm not going to get in a situation where I hear officers say, either actual or implied, trust me, because I just don't do that. So I don't even know why or have any basis for . . . probable cause to believe that Mr. Harris made any of the original plans. . . . Mr. Harris didn't handle any of the drugs, as far as I know. He didn't handle any of the money, as far as I know. And in one of these buys, he was asleep somewhere else in the house. Just because something is taking place in somebody's house does not make them guilty of the charge. And also just because . . . something takes place in somebody's house, does not make it a conspiracy. There has to be evidence of prior events. I don't know what prior events took place. And I'm not going to just simply, by supposition, pull them out of the air and supply them. I've got to have something to hang it on."

The district judge dismissed all the counts, finding that the State's evidence established probable cause for finding that crimes had

been committed, but failed to establish probable cause that Harris had committed the crimes.

The State appeals pursuant to K.S.A. 22-3602(b)(1), which authorizes an appeal to the Kansas Supreme Court by the prosecution from an order of the district court dismissing a complaint. In a prosecutorial appeal from a dismissal, instead of one magistrate judge conducting a preliminary hearing, seven Supreme Court justices conduct a preliminary hearing on the record and issue an opinion. If our finding is adverse to the State, the State is free to ignore our opinion if it can produce additional evidence at a subsequent hearing before a magistrate judge. *State v. Huser*, 265 Kan. 228, 231-32, 959 P.2d 908 (1998).

## Standard of Review

Harris argues that principles of fundamental fairness demand that this court abandon its longstanding determination to use a de novo standard in reviewing State prosecutorial appeals. Harris contends that when considering the sufficiency of the evidence this court should view the evidence in the light most favorable to the party prevailing below, see, *e.g.*, *State v. Smallwood*, 264 Kan. 69, 88, 955 P.2d 1209 (1998), and not reweigh the evidence or pass on the credibility of witnesses, see, *e.g.*, *State v. Wonders*, 263 Kan. 582, 590, 952 P.2d 1351 (1998).

In the recent case of *State v. Phelps*, 266 Kan. 185, 967 P.2d 304 (1998), this court discussed the standard of review applicable to State prosecutorial appeals. The defendant in *Phelps* argued that this court should review prosecutorial appeals under the standard of review applicable to negative findings. See, *e.g.*, *Brown v. Kansas Parole Board*, 262 Kan. 903, 910, 943 P.2d 1240 (1997) (negative finding that a party did not carry its requisite burden of proof will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice). The *Phelps* court reaffirmed the standard stated in *State v. Bell*, 259 Kan. 131, Syl. ¶ 5, 910 P.2d 205 (1996), that an appellate court conducts "'a de novo review of the evidence when considering the trial court's [preliminary hearing] probable cause finding.' [Citations omitted.]" *Phelps*, 266 Kan. at

192. To explain the de novo standard as it applies in prosecutorial appeals, the *Phelps* court quoted *State v. Farmer*, 259 Kan. 157, 161, 909 P.2d 1154 (1996):

" 'The function of a judge or magistrate at a preliminary hearing is not to determine the wisdom of the prosecuting attorney's decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. [Citation omitted.] The sole question before the judge or magistrate at the conclusion of a preliminary hearing is the same question an appellate court is faced with upon de novo review: whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. [Citation omitted.]' " *Phelps*, 266 Kan. at 193.

The standard of review as stated in *Phelps* applies.

### Dismissal of Counts

The State contends that the district judge erred in failing to find probable cause because the evidence it presented to support each element of the crimes charged was not contradicted and because viewing the evidence presented in a light most favorable to the State, the evidence supports a finding of probable cause to believe that each of the crimes was committed by the defendant.

Did the State's case fail because it lacked evidence sufficient to establish that Harris sold drugs to Morales, counts 1 and 2 of the complaint, and that Harris had entered into a conspiracy to sell cocaine with his wife, count 3, and the Chinese man, count 4? No, as to counts 1 and 2; yes, as to counts 3 and 4.

The purpose of a preliminary examination is to determine if it appears that a felony has been committed and if there is probable cause to believe that the person charged committed it. K.S.A. 22-2202(16). It is important to note that the preliminary examination is not a trial of the defendant's guilt; it is merely an inquiry as to whether the defendant should be held for trial. *State v. Hood*, 255 Kan. 228, 230, 873 P.2d 1355 (1994). A discharge from custody at the end of a preliminary examination is not a bar to another prosecution on the same charges. *State v. Puckett*, 240 Kan. 393, Syl. ¶ 6, 729 P.2d 458 (1986).

The function of a judge or magistrate at a preliminary hearing is not to determine the wisdom of the prosecuting attorney's decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. The sole question before the judge or magistrate at the conclusion of a preliminary hearing is the same question an appellate court is faced with upon de novo review: whether the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *State v. Farmer*, 259 Kan. 157, 161, 909 P.2d 1154 (1996).

We have set forth the evidence adduced at the preliminary hearing. We agree with the trial court that it appears that the crimes of sale of marijuana and sale of cocaine have been committed. Based on the testimony of the three State's witnesses, we conclude that there is probable cause to believe that Harris committed the crimes of sale of marijuana and sale of cocaine.

As to the two charges of conspiracy to commit the sale of drugs, we find that the State's evidence failed to establish the necessary elements of conspiracy. K.S.A. 21-3302 provides, in relevant part:

"(a) A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator."

Although the State's evidence establishes illegal sales, there was no evidence from which a person of ordinary prudence and caution could infer agreements between Harris and his wife and between Harris and the oriental drug seller. Under the circumstances, the conspiracy counts were properly dismissed by the trial court.

The district judge's dismissal of counts 1 and 2 of the complaint are reversed, and we order the defendant bound over to the district judge having jurisdiction to conduct the arraignment pursuant to K.S.A. 22-3205.