(172 P.3d 57)
No. 96,445

STATE OF KANSAS, *Appellee*, v. MATTHEW D. DENNY, *Appellant*.

Opinion filed December 7, 2007.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, for appellant.

*Jared S. Maag,* deputy solicitor general, of the office of attorney general, for appellee.

Before RULON, C.J., GREENE, J., and BRAZIL, S.J.

GREENE, J.: Matthew D. Denny appeals his conviction of conspiracy to manufacture methamphetamine, arguing insufficient evidence, prosecutorial misconduct, and errors in sentencing. We affirm.

## *Factual and Procedural Background*

On January 19, 2005, Denny was involved in activities with Scott Cheever that led to methamphetamine manufacturing and consumption and, ultimately, the fatal shooting of Greenwood County Sheriff Matt Samuels. The extent of Denny's involvement in all these activities is at the heart of this appeal and will be discussed in more detail below. Denny was charged with first-degree felony murder, manufacture of methamphetamine, and conspiracy to manufacture methamphetamine. The jury found Denny guilty of conspiracy to manufacture methamphetamine but acquitted him of the other counts. He was sentenced to 164 months' imprisonment.

## *Was there Sufficient Evidence to Support the Conviction of Conspiracy to Manufacture Methamphetamine?*

Denny argues he participated in certain aspects of the manufacturing of methamphetamine, but joint participation in criminal activity, standing alone, is not sufficient to support a finding of an agreement to commit the crime, relying heavily on *State v. Harris,* 266 Kan. 610, 975 P.2d 227 (1999). In a challenge of this nature, we consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Parker,* 282 Kan. 584, 597, 147 P.3d 115 (2006).

K.S.A. 2006 Supp. 21-3302(a) provides:

"A conspiracy is an agreement with another person to commit a crime or to assist in committing a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator."

The agreement required by the statute need not be express but may be implied from the actions of the parties. *State v. Smith*, 268 Kan. 222, 228, 993 P.2d 1213 (1999); *State v. Hill*, 252 Kan. 637, 641, 847 P.2d 1267 (1993). Moreover, the State need not prove the completed commission of the underlying crime to prove conspiracy to commit that crime. *Hill*, 252 Kan. at 641-42.

Here, the evidence of Denny's participation was rather extensive. Based upon the testimony of Belinda Cooper who was living at the location of these activities, Denny was part of a group who "all joined together to make methamphetamine." Denny was outside with the others, and when they came in the house to manufacture, Denny carried "the Budlight bag." When they received a tip that "cops are on the way," she went up to warn Denny and Cheever, and "one was holding a bottle, and the other one was holding a tube."

Billy Nowell testified that he was at the location when Cheever and Denny arrived, and that he and Cheever began "peeling batteries" and Denny and Cooper "were grinding pills up in the kitchen." All four went outside, got the anhydrous ammonia, and started the manufacturing process, and Denny "was holding the flashlight for us." Denny participated during the process, at one point "pouring" and at another point carrying the "Budlight duffel bag that contained everything that was needed to complete the manufacturing." Throughout the process, Cheever and Denny talked with each other on walkie-talkies they had brought with them. Nowell also testified Denny admitted to cooking before that particular cook and that he willingly took part; Nowell never heard Denny say he "wasn't willing to help." After the process was completed, Nowell testified Denny smoked methamphetamine "off a piece of aluminum foil."

Does this extensive participation in the process demonstrate an implied agreement to manufacture methamphetamine? Denny ar-

gues it does not; we disagree. Viewing this evidence in the light most favorable to the State, we conclude it would stretch the imagination to think Denny's participation did not reflect agreement to manufacture. We are most persuaded by the evidence that he was involved in the earliest stages of the process, talked with Cheever throughout the process, remained involved throughout, and "enjoyed" the fruits of the process in his consumption of the finished product.

Denny argues *State v. Harris*, 266 Kan. 610, stands for the proposition that conspiracy is not proven by mere participation in the absence of some evidence of an agreement. We disagree. *Harris* held that mere *presence* of a purported coconspirator at an illegal sale did not imply agreement with other purported coconspirators to sell cocaine. Here, Denny was not merely present; his extensive involvement implies agreement.

Denny also argues that because the jury acquitted him of manufacture of methamphetamine, the facts surrounding such manufacture should not be considered as supportive of an implied agreement to manufacture, citing *State v. Simmons*, 282 Kan. 728, 148 P.3d 525 (2006). We do not read *Simmons* as holding that once a factfinder determines there is insufficient evidence to convict of the completed crime, charges of conspiracy are unwarranted. The court in *Simmons* merely noted that the need for an accomplice instruction was undermined by a dismissal at preliminary hearing of the other purported coconspirator. 282 Kan. at 736-37.

We are convinced that when the evidence is viewed in the light most favorable to the State, a rational factfinder could have found Denny guilty of conspiracy to manufacture methamphetamine.

### Did Prosecutorial Misconduct Deny Denny a Fair Trial?

Denny next argues that several comments of the prosecutor during closing argument were beyond the wide latitude allowed the prosecutor in discussing evidence and denied him a fair trial. Appellate review of such a challenge requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. Second, the appellate court decides whether those

comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

In the second step of the two-step analysis, the appellate court considers three factors:

"(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22,] 17 L. Ed 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial], have been met. [Citation omitted.]" *Albright*, 283 Kan. at 428.

Denny complains of three instances of such misconduct: (1) the prosecutor denigrated defense counsel by suggesting he "spen[t] so many hours of your time talking about these issues that don't matter"; (2) the prosecutor personally attacked Denny's credibility in stating about his testimony, "Do you believe that? Of course, you don't, because it's not the truth"; (3) the prosecutor led the jury to believe that Denny's silence should be held against him, in stating about the other witnesses, "they both are going to serve a lengthy term of imprisonment in federal prison, which is what they deserve. But they've admitted what they did. The defendant hasn't done that yet. You have to find him guilty of what he did."

With regard to the first instance, we view the comment as an attempt to get the jury to focus on the evidence most relevant to the State's case rather than on the defense's version. Our courts have not found such comments beyond the wide latitude allowed the prosecutor in discussing the evidence in closing argument. See, *e.g., State v. Rodriguez*, 269 Kan. 633, 643-45, 8 P.3d 712 (2000); *State v. Mosley*, 25 Kan. App. 2d 519, 524, 965 P.2d 848, *rev. denied* 266 Kan. 1113 (1998).

With regard to the second instance, we view the comment as prompted by a comment during argument by the defense, vouch-

ing for the truth of Denny's story of what happened at the location. Given such credibility sparring by both counsel, as well as the isolated nature of the comment, we cannot conclude that this was gross and flagrant misconduct or that it reflected such ill will by the prosecutor as to deprive· Denny of a fair trial. See *State v. Elnicki*, 279 Kan. 47, 64, 105 P.3d 1222 (2005) (no prejudicial error where questionable statement is provoked by argument of counsel).

With regard to the third instance, we believe the comment must be viewed in context; the defense stated the key State witnesses had motive to lie due to their plea agreements. In response, the State commended their admission of guilt and contrasted it with the jury's need to "find [Denny] guilty of what he did." The argument seems to have been that the State witnesses' plea agreements entitled them to more credibility than Denny, who might be more inclined to fudge his story in order to avoid the consequences of his acts. In any event, we again conclude that this was not gross and flagrant misconduct or reflective of ill will such as to deprive Denny of a fair trial.

We conclude Denny's complaints of prosecutorial misconduct do not entitle him to a new trial; in fact, having studied the entirety of the closing argument, having considered the high stakes and impassioned arguments from both parties in a case involving the brutal murder of a popular county law enforcement officer, and having considered Denny's acquittal for two related charges, we believe Denny was not maligned by the State and received a fair trial.

### Did the District Court Err in Sentencing Denny for a Severity Level 1 Felony?

Denny next argues he was entitled to be sentenced for a severity level 4 felony because the use of drug manufacturing paraphernalia with the intent to manufacture a controlled substance (a level 4 felony) is identical to the crime of conspiracy to manufacture methamphetamine (a level 1 felony). Where two statutes with differing penalties proscribe identical conduct, a criminal defendant may be

sentenced only to the lesser of the two penalties. *State v. McAdam*, 277 Kan. 136, Syl. ¶ 3, 83 P.3d 161 (2004).

We addressed this precise question in *State v. Miles*, 35 Kan. App. 2d 211, 130 P.3d 1198 (2005), *rev. denied* 280 Kan. 988 (2006). In *State v. Fanning*, 281 Kan. 1176, 1183, 135 P.3d 1067 (2006), our Supreme Court cited with apparent approval the *Miles* result, that the elements of conspiracy to manufacture methamphetamine under K.S.A. 65-4159(a) were not identical to the elements of possession of drug paraphernalia under K.S.A. 65-4152. We do not perceive that there is any reason to depart from *Miles*.

In *Miles*, we held that K.S.A. 65-4152 possesses a crucial element which differs from the elements for manufacturing methamphetamine under K.S.A. 65-4159(a): physical control of drug paraphernalia. 35 Kan. App. 2d at 214. We recognize that this holding may be difficult to reconcile with our Supreme Court's analysis in *Fanning*, where the court held that the statutory elements were not identical when comparing the offenses of attempted manufacture of methamphetamine and possession of drug paraphernalia with the intent to manufacture methamphetamine, so long as the facts of the case showed no use of the paraphernalia. 281 Kan. at 1183-84. See *State v. Bethe*, No. 96,020, unpublished opinion filed May 25, 2007; *State v. Merz*, No. 95,432, unpublished opinion filed May 25, 2007; *State v. Johnston*, No. 95,703, unpublished opinion filed May 25, 2007.

We need not belabor any analytical differences among these recent cases, however, so long as we focus on the elements of *conspiracy* to manufacture and compare those elements to possession of drug paraphernalia. Whether or not the defendant used the paraphernalia to manufacture, the crime of conspiracy inherently contains an additional element that is clearly not present in the crime of possession of paraphernalia: an agreement to manufacture. Because the statutes proscribe different conduct, the rule of *McAdam* does not require resentencing of Denny.

### *Did the District Court Err in Considering Denny's Prior Juvenile Adjudications in Determining His Criminal History Score?*

Finally, Denny argues his prior juvenile adjudications should not have been included to determine his criminal history score of E, relying on *Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). This argument has been addressed and rejected in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003) (holding that juvenile adjudications are appropriately included in determining a defendant's criminal history score). See *State v. Lackey*, 280 Kan. 190, 239-40, 120 P.3d 332 (2005), *cert. denied* 547 U.S. 1056 (2006); *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2001).

The Court of Appeals is duty bound to follow the Kansas Supreme Court precedent absent some indication the court is departing its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869 (2007).

Affirmed.