No. 73,552

STATE OF KANSAS, *Appellant/Cross-appellee*, v.
W. FLETCHER BELL, *Appellee/Cross-appellant*.

(910 P.2d 205)

*Steven Hornbaker*, special assistant attorney general, argued the cause, and *Steven L. Opat*, special assistant attorney general, and *Carla J. Stovall*, attorney general, were with him on the briefs for the appellant/cross-appellee.

*Mark L. Bennett, Jr.*, of Bennett & Dillon, L.L.P., argued the cause and was on the brief for the appellee/cross-appellant.

The opinion of the court was delivered by

ABBOTT, J.: This is the State's appeal from the district court's dismissal of all criminal charges at the conclusion of the preliminary hearing based on the State's failure to meet its burden of proof that a crime had been committed. The State appeals pursuant to K.S.A. 1994 Supp. 22-3602(b)(1).

The defendant, W. Fletcher Bell, was charged with two counts of theft by deception (K.S.A. 21-3701[b]) arising out of a workers compensation claim. To convict a defendant of theft by deception, the State is required to prove a number of elements (K.S.A. 21-3701[b] and PIK Crim. 3d 59.01). Only one of the elements appears to be in dispute in this case: that the defendant obtained money from the State by means of a false representation or statement that deceived the State, which relied in whole or in part upon the false representation or statement of the defendant.

The burden of proof at a preliminary hearing is basic to this opinion. Preliminary examinations are authorized by K.S.A. 1994 Supp. 22-2902. K.S.A. 1994 Supp. 22-2202(16) defines a preliminary examination as "a hearing before a magistrate on a complaint or information to determine [1] if a felony has been committed and [2] if there is probable cause to believe that the person charged committed it." Under the first requirement, a judge may determine that a felony has been committed based on the evidence presented at the preliminary hearing if "there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that it appears a felony has been committed." *State v. Engle*, 237 Kan. 349, 350, 699 P.2d 47 (1985).

If a preliminary hearing judge determines a felony has been committed, then the judge must determine whether there is probable cause to believe that the person charged committed the crime. "In order to prove probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to con-

scientiously entertain a reasonable belief of the accused's guilt. *State v. Green*, 237 Kan. 146, Syl. ¶ 3, 697 P.2d 1305 (1985)." *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 (1995). The evidence need not prove guilt beyond a reasonable doubt, only probable cause. 257 Kan. at 492. According to *In re Mortimer*, 192 Kan. 164, 166-67, 386 P.2d 261 (1963):

"There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty. [Citations omitted.]"

A judge at a preliminary hearing should not evaluate the prosecutor's decision to file criminal charges against the defendant. The judge should not dismiss the case simply because the judge believes the State should not have prosecuted the case due to the remote or nonexistent possibility of a conviction. *Bockert*, 257 Kan. at 492 (citing *State v. Puckett*, 240 Kan. 393, Syl. ¶ 3, 729 P.2d 458 [1986]). When evaluating evidence presented at a preliminary hearing, the judge must seriously consider the defendant's defense and pass judgment on the credibility and competency of both the State's and the defendant's witnesses. If there is a conflict in witness testimony that creates a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State. *State v. Jones*, 233 Kan. 170, 174, 660 P.2d 965 (1983).

In this case, the preliminary hearing judge found that the State failed to meet its burden of proof by establishing that a crime had been committed. In appeals by the prosecution from an order discharging the defendant for lack of probable cause, this court follows the same standard for weighing the evidence as the judge at the preliminary examination. See *Bockert*, 257 Kan. at 492-93. This court is to conduct a de novo review of the evidence when considering the trial court's probable cause finding. *State v. Martinez*, 255 Kan. 464, 465, 874 P.2d 617 (1994).

Under Count I, the State attempted to prove that the defendant intentionally and willfully obtained workers compensation payments from the State by filing a false workers compensation claim. The State argued that the workers compensation claim was false because the injury which the defendant claims to have suffered—a back injury from lifting a briefcase out of the trunk of his car—did not occur or, if it did occur, the defendant did not incur the injury in the manner in which he claims to have incurred it.

Under Count II, the State argues that the defendant made false representations which caused his workers compensation payments to be improperly paid out of the State Self-Insurance Fund, which is funded primarily by taxpayers, instead of being properly paid out of the Second Injury Fund, which is funded primarily by insurance companies. Thus, Count II alleges that the defendant intentionally obtained control over workers compensation payments with the intent to permanently deprive the State Self-Insurance Fund of property by making false representations.

The defendant filed a motion to dismiss the charges, contending that they were barred by the statute of limitations and collateral estoppel. The trial court denied the motion, and the defendant has filed a cross-appeal. Because of our decision on the direct appeal, we do not reach the cross-appeal.

## Count I

It is undisputed that the defendant was injured in an automobile accident in 1987. That injury primarily involved the defendant's cervical spine. The defendant also had a degenerative condition in his lower back for which he had received medical treatment. The defendant had filed a Form 88 revealing all of his prior back injuries. This form was available to and in the possession of the State throughout this proceeding and throughout the workers compensation proceeding.

Although the following facts are relevant to Count II, some information regarding the relationship between the State Self-Insurance Fund and the Second Injury Fund will aid in understanding the background of the case and why certain events occurred or did not occur. Thus, the information is provided here.

The State of Kansas has a Self-Insurance Fund (SSIF), which pays workers compensation claims to state employees who are injured on the job. At the time the defendant's injury occurred, all elected state officials were considered state employees. In fact, at least one Kansas governor has made a workers compensation claim which was paid by the SSIF. The money for the SSIF is appropriated by the legislature from State funds.

There is also a Second Injury Fund (the Fund) which is designed to encourage employers to hire injured and handicapped employees. Most of the money for the Fund (approximately 97%) is provided by insurance carriers (the cost is ultimately borne by all employers who purchase workers compensation insurance or who are self-insureds). The State of Kansas contributes approximately 3% of the money in the Fund.

Employers, including the State of Kansas, are careful to file Form 88s when they hire an employee who has a prior injury or handicap. The form is helpful in relieving their insurance carrier of partial or full responsibility for a workers compensation claim made by a previously handicapped or injured employee. Instead, such claims may be assessed against the Fund. As a result, the employer's loss experience is lower, thereby making the employer's insurance premium lower and saving the employer money. The Fund also applies to self-insured employers.

As a practical matter, when an injured state employee files a claim against the SSIF, the SSIF then impleads the Fund and attempts to prove that the Fund should pay all or part of any workers compensation award which the employee may receive.

The SSIF is administered through the Department of Administration, and the State Insurance Commissioner has nothing to do with the SSIF in any way. The Fund, at the time of the injury in this case, was administered by the office of the State Insurance Commissioner and, of course, the defendant in this case was the Insurance Commissioner at the time this claim arose.

Highly summarized (more detail will be added later in the opinion), the defendant was attending a meeting of the National Association of Insurance Commissioners in Kansas City, Missouri, on January 18, 1989. There is no question that the defendant was on

the job and that he lifted a briefcase out of the trunk of his automobile on this date. The defendant alleges that when he bent over and reached into the trunk of his automobile to lift out a 30-40 pound briefcase, he felt immediate pain in his low back. The defendant filed a workers compensation claim based on his back injury from lifting the briefcase.

The defendant had been undergoing treatment with his orthopedic surgeon, Dr. John Wertzberger, for back and other problems, and he visited with Dr. Wertzberger on January 25, 1989, regarding this case. Dr. Wertzberger was of the opinion that prior to the January 25 appointment, the defendant's low back pain problems were somewhat of an inconvenience that did not require any change in his work or lifestyle. After the January 25 appointment, defendant had obvious nerve disfunction which was producing a potential footdrop and paralysis of the L-5 neuromuscular mechanism. Dr. Wertzberger recommended complete and total bed rest at that time and was of the opinion that surgery would probably be necessary in the future. Dr. Wertzberger was of the opinion that the defendant suffered a permanent partial disability of 25% to the body as a whole.

The SSIF had a number of people involved in reviewing the defendant's workers compensation claim and finally determined that it would seek a second medical opinion. The SSIF contacted a doctor from the state of Missouri, Dr. Glenn Barr, because the SSIF felt it would be best to obtain a doctor who had no connection with the defendant and did not know him or any of the lawyers involved in the case. Dr. Barr examined the defendant and concluded that the defendant had a 37% permanent partial disability to the body as a whole. Thus, the State's independent medical examiner found that the defendant had a 12% greater injury to the body as a whole than did the defendant's treating physician. It is obvious from the medical testimony that the defendant has a substantial disabling back problem.

As the case progressed, Billy Newman was selected as the attorney to represent the SSIF. Newman was employed in the Department of Administration's legal division. The person who ordinarily would have been handling the case, the chief attorney for the SSIF,

disqualified himself because his wife did some contract work for the Insurance Department and he was concerned there might be an appearance of a conflict of interest. The State makes considerable argument about the inexperience of Billy Newman and contends that an experienced workers compensation attorney probably would have impleaded the Fund. Newman testified that he had no knowledge or information that the defendant had anything to do with his assignment to handle the claim or the manner in which the claim was handled.

Chris Cowger was in charge of the Fund throughout the pendency of the defendant's workers compensation claim. He testified that he talked to the defendant regarding the Fund's potential involvement with the workers compensation claim. Both Cowger and the defendant recognized the potential conflict if the Fund were to be impleaded, because the Insurance Department, which the defendant was the head of, was responsible for the administration of the Fund. The defendant and Cowger agreed orally and in writing that if the Fund were impleaded, neither Cowger nor any other attorney in the Insurance Department would have anything to do with the handling of the claim.

According to Cowger, the defendant did not indicate that Cowger should keep the Fund from being impleaded, nor did the defendant indicate that he did not want the Fund impleaded. Cowger and the defendant merely discussed the potential conflict and the fact that no one from the Insurance Department would be involved if the Fund was impleaded.

George Welch is the director of the SSIF. Welch testified it was his responsibility to determine whether the Fund was to be impleaded, and he recommended to Newman, the attorney representing the SSIF in the workers compensation case, that the Fund not be impleaded. Welch further testified that neither defendant, nor anyone on his behalf, contacted him in any manner or indicated any desire that the Fund not be impleaded. Neither the defendant nor anyone on his behalf had any input into Welch's decision that the Fund should not be impleaded.

Newman testified that he recommended the Fund not be impleaded for tactical reasons. This would have put two attorneys on

the State's side. On the other hand, both Newman and Welch recognized they had no medical evidence before them (possibly because they asked the wrong questions or, more accurately, because they failed to ask the correct questions of the medical experts) that gave a basis to implead the Fund, and Welch was concerned that attorney fees would be assessed against the SSIF if it improperly impleaded the Fund. Thus, the Fund was not impleaded.

The administrative law judge who heard the case determined that defendant had a 30% permanent partial general bodily disability and made an award on that basis.

The defendant continued to draw workers compensation benefits until publicity concerning his claim drew attention to the claim, which was a public record open at all times to the public. The workers compensation case was then reopened and settled on a stipulation. The terms of the stipulated settlement are of little or no importance to this decision. The State stipulated that the defendant was injured on the date alleged and suffered an injury. The defendant gave up the remainder of his monetary award but retained medical benefits.

Criminal charges were later filed.

Although we are not bound by the trial judge's findings and decision, we agree with them. The trial judge found it was abundantly clear that the defendant did, in fact, sustain an injury and that the injury was consistent with the briefcase incident. Further, the trial judge pointed out that these findings are fully supported by both medical experts. The trial judge went on to cover the conflicting testimony and concluded that the State had not come forward with any evidence to show that something other than the briefcase incident caused the injury.

Basically, the State tends to rely on some discrepancies in dates which appear to have little, if any, significance and asks this court to hold that the discrepancies are sufficient to bind the defendant over for trial.

Little would be gained by setting forth in great detail the testimony in this case. The State did offer evidence of an eyewitness to the briefcase lifting incident. This eyewitness did not notice the defendant showing any signs of pain or discomfort when he lifted

the briefcase out of the trunk. However, the same person testified that the defendant had not exhibited signs of discomfort in his back prior to the date of the briefcase incident but did exhibit signs of great pain and discomfort after that date, all of which the defendant attributed to the lifting of the briefcase. Furthermore, the wife of this witness told a KBI agent that she could not recall when, but she had seen defendant in pain and discomfort either when he lifted the briefcase out of the trunk or shortly thereafter. An official from the Missouri Highway Commission observed the defendant at the meeting on January 18 in obvious pain and discomfort. The defendant told the official that he had hurt his back lifting a briefcase. In fact, numerous other witnesses testified that they observed the defendant exhibit pain and discomfort after the date of the briefcase incident which they had not observed before.

Several dates given to the doctors by the defendant were not always consistent. However, the doctors all testified that they frequently make mistakes in recording dates and that the dates were not misleading to them and did not affect their opinion of the defendant's injury.

There is a considerable amount of testimony concerning an MRI the defendant had taken. The defendant told one of the medical experts that it was taken on a date after the briefcase incident, when in fact it was taken before the briefcase incident. However, Dr. Wertzberger had taken the MRI and he knew what date the MRI was taken. The second medical expert had a copy of the MRI report, which clearly gives the date on which the MRI was taken. All of the attorneys either had this report indicating the proper date of the MRI or it could have been available to them had they asked to see it.

Without prolonging the opinion, our examination of the record de novo leads us to conclude the State did not sustain its burden of proof in showing that a crime had been committed under the standards set forth above.

## Count II

The State contends that if there was a compensable injury it should have been paid by the Fund. Instead, the State asserts, the

defendant caused the claim to be paid from the SSIF. As a result, the money was paid out of State funds when it otherwise would have been paid by insurance carriers and self-insurers.

In regard to Count II, the trial court stated:

"Count 2 accuses Mr. Bell of somehow engineering the payment of a worker's compensation award from the public funds rather than the second injury fund. I have heard testimony at length from Mr. Newman, Mr. Welch and others as to how that came about. Apparently Mr. Newman and Mr. Welch have now afterward concluded that perhaps the fund should have been impleaded. But they I think have adequately explained the reasons why they concluded at that time that it would not have been appropriate to implead the fund because they didn't want to subject themselves to possible attorney fees.

"The only evidence that's been offered to support Count 2 is the memorandum and the testimony of Terry Bernatis, and I am referring to State's Exhibit Number 11 in which she states that Mr. Welch had informed her that it was Mr. Bell's desire that the fund not be impleaded. Mr. Welch, of course, emphatically denies making such a statement.

"At a preliminary hearing I am obliged to consider the evidence in the light most favorable to the State. But assuming for the sake of argument that that testimony is true, that being the testimony of Ms. Bernatis, what does it prove? All it establishes is that Mr. Bell had that desire. That's not a crime. Every witness has testified that had anything to do with making that decision that Mr. Bell had absolutely no input in any decision of whether or not to implead the fund. So I can't conclude that any crime has been committed as far as the allegations contained in Count 2."

The trial court concluded:

"I do not incidentally regard this as a close case, counsel. Given all the public cry that has surrounded this affair I am frankly astonished after two and a half days of testimony that the State's evidence is woefully inadequate to support the offenses charged.

"For those reasons, the Court finds that the State has failed to meet its burden of proof to establish that a crime has been committed. The defendant is discharged and this case is dismissed."

All of the evidence, other than the memo written by Ms. Bernatis, who had never met the defendant or talked to him in any way, is to the effect that the defendant had absolutely nothing to do with the decision not to implead the Fund. Further, the defendant never suggested to anyone who testified in the case that he did not desire the Fund to be impleaded. The defendant's conversation with Cowger merely determined that if the Fund was im-

pleaded, the Insurance Department would not be involved in the case. The trial judge correctly concluded that, at most, the memo from Ms. Bernatis only expressed a desire by the defendant that the Fund not be impleaded. Those responsible for impleading the Fund stated that it was their decision not to implead the Fund in this case. They testified that they made this decision without any input from the defendant or anyone in his behalf and that the defendant had never expressed a desire, directly or indirectly, to them that the Fund not be impleaded. We reach the same conclusion as the trial court: Even if it was the defendant's desire that the Fund not be impleaded, this is not evidence of a crime because the defendant took no action to prevent the Fund from being impleaded and the defendant had no authority to do so.

The State again makes a number of arguments that have little if any relevance in showing that a crime was committed. It argues that the attorney the State appointed to handle the workers compensation claim for the SSIF had little experience in workers compensation cases. This is frequently true. However, the defendant had no authority over and no connection with the State Department of Administration, which appointed the inexperienced attorney to handle the case. We have observed that it is not at all unusual for the State to be represented by young, inexperienced attorneys. This is a decision that the legislature has made in setting pay. It becomes a tradeoff. The State pays lower salaries and the inexperienced attorneys gain experience.

All of the attorneys and administrators in this case viewed the evidence available to them and determined not to implead the Fund. Hindsight now tells them they should have asked different questions and that if they had asked different questions, they probably would have impleaded the Fund. It is not the workers compensation claimant who has the duty to implead the Fund, and it would be an extremely rare case in which the claimant would do so. Here, the claimant had filed a Form 88 and put the State on notice of his previous injuries. Further, the State had full access to all of the defendant's medical reports (with the possible exception of a rough draft of a medical report that we do not deem significant). The defendant cannot be held criminally responsible for the

negligence (if indeed there was any) of state employees who are not in the defendant's employ or control.

We have examined the record, considered all of the State's arguments, and conclude that the State has failed in its burden to prove that a crime has been committed under Count II. The State's appeal is therefore dismissed as to Counts I and II. As a result of our having reached that decision, the defendant's cross-appeal is moot.

Appeal dismissed.

Six, J., not participating

DAVID PRAGER, C.J. Retired, assigned.