No. 79,509

STATE OF KANSAS, *Appellant*, v. JANETTA JEAN WILSON, *Appellee.*
(986 P.2d 365)

Opinion filed July 9, 1999.

*Julie A. McKenna*, county attorney, argued the cause, and *Christina Pellant*, assistant county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellant.

*Joseph A. Allen*, of Joe Allen Law Office, of Minneapolis, argued the cause, and *C. Richard Comfort*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a preliminary hearing bind-over case. The State appeals from the dismissal of charges. Defendant Janetta Jean Wilson was charged with the sale of cocaine within 1,000 feet of school property, conspiracy to sell cocaine, and unlawful possession of drug proceeds. The single issue is whether there was probable

cause to believe Wilson had committed the crimes charged. Our jurisdiction is under K.S.A. 22-3602(b)(1) (appeals may be taken to this court by the prosecution as a matter of right from an order dismissing a complaint, information, or indictment). We reverse the district court and remand the case, with directions to reinstate the charges.

## FACTS

Patricia Giordano, a Junction City police officer, had been an officer for 4 years. She was trained to make observations about a person's demeanor and appearance. Giordano was working in Saline County with a drug task force that included her supervisor, another detective, a confidential informant, and Deputy Sheriff Hughes of Saline County. The task force was operating in a specific Salina location. Giordano and the informant, who were in a vehicle together, stopped in the investigation area to visit with a Hispanic male who Giordano believed was selling narcotics. Giordano and the informant said they wanted one rock of crack cocaine. The Hispanic male advised he would go find somebody who had it. He entered a blue house and came out moments later advising them that someone was going to go "get it." Giordano then saw a female walk out of the blue house. Giordano testified that the Hispanic male gave the female a $20 bill, and the female accepted it in exchange for the crack cocaine. Giordano stated that the female had the bill in her hand and was within 5 feet of Giordano when they "did the purchase." Giordano continued her description of the transaction:

"She shortly—she came back shortly later, entered the blue house again and then the Hispanic male went back into the blue house, went back, said they're cutting it up. He stayed there with us and then the female, the defendant, came back out of the blue house, walked behind the vehicle which we were at and then walked out of my sight for just not even two seconds and then walked over to the door of—the passenger's side door of my vehicle and handed the CI [The term "CI" (confidential informant) is a misnomer. The "CI" was a witness] a rock of crack/cocaine.

"Q. Were you in the vehicle at this time or were you outside the vehicle?

"A. Myself and the CI were both inside the vehicle.

. . . .

"Q. Do you see that female in the courtroom today?

"A. Yes, I do.

. . . .

"Q. Okay. Did you ever exit the vehicle?
"A. No.
"Q. But you were in the front seat of the vehicle?
"A. Yes.
"Q. Okay. Did you see the crack/cocaine being handed to the CI?
"A. Yes, I did.
"Q. And that was the defendant [Wilson] who handed that to him?
"A. Yes.
"Q. Him or her; is that correct?
"A. Yes."

Giordano also testified that it was dusk at the time of the transaction and she was not immediately sure of the sellers' race or gender. On cross-examination Giordano explained:

"Q. Okay. In fact, tell me why you couldn't tell whether it was a man or a woman.
"A. 'Cause your defendant looks a little manly I guess you could say 'cause her hair was pulled back in a ponytail, she didn't have any makeup on. She looks a lot different today than she did that day.

. . . .

"Q. But you also said that she looks a lot different today than what you remember; is that a correct statement?
"A. She looks different but I can tell she's the same person.

. . . .

"Q. And you didn't become sure it was a woman until sometime later; is that correct?
"A. When I saw her picture, yes.
"Q. So someone gave you a picture and said could this be the person?
"A. They said does this look like the person and I said yes, it is the person.

. . . .

"A. I thought it was a woman but I wasn't hundred percent sure.
"Q. But, you're hundred percent sure today?
"A. *I'm a hundred percent sure the person we bought crack/cocaine from was your defendant or your client, excuse me.*

. . . .

"Q. In the picture that you observed that you were identifying my client from, when was this done?
"A. When did I look at the picture?
"Q. Uh-huh.
"A. I believe it was the next time we were in Salina, which would have been a couple of days later I believe.

"Q. So, two or three days later after seeing an androgynous person you identified her from that picture?

. . . .

"Q. Okay. The picture they showed you to make this identification, were they all females, all males or a mix?
"A. They were a mix." (Emphasis added.)

Deputy Hughes provided the photographs for Giordano to view. Giordano was advised by Deputy Hughes that the pictures were of "some of the people that they had observed in the area," people "that hung out in the Seventh and Hamilton area." Deputy Hughes did not present the photo lineup to Giordano as he would to a civilian because he felt Giordano "was properly trained and qualified."

On redirect examination Giordano reaffirmed her identification:

"Q. Okay. And is there any doubt, as you look at Janetta Wilson today, that she was the person you purchased crack/cocaine from?
"A. There's no doubt at all."

On recross-examination Giordano again identified Wilson:

"Q. There's no doubt that the person that you identified through a picture three days later is the person you see in the courtroom today?
"A. Or the person that sold us the crack/cocaine. There is no doubt in my mind."

The photographs shown to Giordano were not introduced. Deputy Hughes did not know if he still had the photographs. Giordano first identified Wilson from the photographs. She again identified Wilson at the preliminary examination.

At the end of the hearing, the district judge said:

"Well, the issue of identification is obviously extremely important at a preliminary hearing because one of the findings the Court has to make is a finding that there is probable cause to believe that this defendant committed the offense. I got a problem, counsel, with this photo ID. The officer who positively identified this person in the courtroom today could not even, as Mr. Allen pointed out through cross-examination, identify whether the person sold the cocaine was male or female, was black or white or anything else until she allegedly saw a picture which verified or which made a strong suggestion apparently as to the identity of the suspect. Where is the picture? Where are these pictures? Officer Hughes was—testified . . . that he didn't even know where these pictures are, whether he still has them. The defendant has an absolute right to confrontation in cross-examination of a photo lineup. Any subsequent—any subsequent identification of

this defendant is tainted by the fact that the photo lineup has now been lost or destroyed. It was not presented subject to cross-examination and confrontation. She can sit here and tell me till tomorrow that she's a hundred percent sure now after she sees the person in the courtroom, after she's seen a photograph and after all this passage of time. That's not a hundred percent sure identification because that identification is tainted by evidence which has not been presented to this Court subject to cross-examination and confrontation and which apparently is not available for cross-examination and confrontation.

"The State has not identified this defendant as the person who committed the offenses alleged in Count 1, 2, or 3 and there is no probable cause to bind this defendant over on those three counts. The defendant is discharged."

## DISCUSSION

We are at the bind-over stage of a criminal case. All agree a felony was committed. The only question is whether there is probable cause to believe that the felony was committed by Wilson, a question of law over which we have unlimited review. *State v. Bell*, 259 Kan. 131, 133, 910 P.2d 205 (1996). The legal standards we apply are well known. Guidance comes most recently from *State v. Powell*, 266 Kan. 282, 971 P.2d 340 (1998).

*Powell* teaches: (1) From the evidence presented the court must draw inferences favorable to the prosecution, (2) the evidence need only establish probable cause, not guilt beyond a reasonable doubt, (3) probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt, (4) the court's function is not to determine the wisdom of the decision to file charges, (5) and it is not the court's function to conclude there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent. *Powell*, 266 Kan. at 283.

Here we are concerned with the dismissal of a complaint. We are not reviewing either a motion to suppress Giordano's photo identification or a claim of error in a direct appeal. A "far stricter standard of review is required" when determining a sufficiency of evidence question in a direct appeal. *Powell*, 266 Kan. at 291. Here, the State need only present evidence of probable cause; evidence to support guilt beyond a reasonable doubt is not required. 266 Kan. at 290; see also *State v. Mack*, 255 Kan. 21, 27-28, 871 P.2d

1265 (1994) (discussing the eyewitness identification test applied in ruling on a trial court's denial of a motion to suppress).

It is well established in Kansas that in determining whether probable cause exists, a judge is required to pass judgment on the credibility of witnesses called by the prosecution and defense. Relying on the earlier decision of this court in *State v. Jones*, 233 Kan. 170, 660 P.2d 965 (1983), we said in *Bell*:

"When evaluating evidence presented at a preliminary hearing, the judge must seriously consider the defendant's defense and pass judgment on the credibility and competency of both the State's and the defendant's witnesses. If there is a conflict in witness testimony that creates a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State." 259 Kan. 131, Syl. ¶ 4.

The question of the credibility of a witness at a preliminary examination must be approached with caution. In *State v. Chapman*, 252 Kan. 606, 619, 847 P.2d 1247 (1993), we noted when passing upon this question that the judge must keep firmly in mind "other basic principles applicable to consideration of sufficiency of the evidence at a preliminary examination." A review of those basic principles is appropriate here.

" 'A preliminary examination differs from a trial. This court stated in *In re Mortimer*, 192 Kan. 164, 166, 386 P.2d 261 (1963):

" ' "There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty." ' " 252 Kan. at 620.

In *State v. Chapman*, 252 Kan. 606, the district magistrate judge dismissed certain charged offenses after the preliminary examination. No reasons were stated. In reversing the magistrate's decision, we noted that the bulk of the evidence at the preliminary examination was the testimony of two convicted felons who may have hoped to lighten their own punishment by testifying against Chapman. We also acknowledged that "[i]t was the magistrate's duty to

assess their credibility." 252 Kan. at 616. However, we further noted that if the reasoning of *Jones*, 233 Kan. 170, is followed,

"the court would not require the magistrate to discharge Chapman due to doubts about the witnesses' credibility as long as the doubts did not obviate the appearance that he probably committed the felony with which he was charged. [Citation omitted.] . . . 'At the preliminary examination when there is a conflict in testimony, a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution.' [Citation omitted.]" 252 Kan. at 616.

We reversed and reinstated the charges against Chapman.

Here, we have an in-court identification by a police officer. The photos were viewed by Giordano as a trained officer carrying out her investigatory duties in relation to a staged drug buy. At the preliminary hearing, Officer Giordano positively identified Wilson six times as the person making the buy. If the trial court had doubts about Giordano's credibility, those doubts should have been resolved in favor of the State so long as they did not obviate the appearance that Wilson probably committed the crime charged.

The question of whether the identification was tainted is an issue more properly resolved in a motion to suppress after the defendant is bound over for trial. Here, the district court found the identification was tainted without holding a hearing on the matter. Hughes did not testify that the photos were lost or destroyed. He stated he did not know whether he still had the photographs. The State should have been given an opportunity to produce the photos for a proper determination as to whether the identification was tainted. The State may have chosen to produce the witness in the car with Giordano to positively identify Wilson at a suppression hearing. Under these facts and at this stage in the proceedings, it was inappropriate for the district court to conclude the identification was tainted.

We too question the suggestiveness of the identification and Giordano's credibility. But, we cannot say, based on these facts, that these questions have obviated the appearance that Wilson probably was the person who sold the crack cocaine to Giordano. See *Chapman*, 252 Kan. at 616. Applying the legal standards appropriate to a preliminary hearing, Wilson should have been bound over for trial.

Reversed and remanded to reinstate the complaint.

DAVIS, J., dissenting: I agree with the law cited by the majority opinion. I disagree with the majority's conclusion that probable cause existed to believe that the defendant committed the crimes charged. Therefore, I dissent and would affirm the district court's decision to dismiss charges and discharge the defendant.

K.S.A. 22-2902 establishes that every person arrested on a felony warrant has a right to a preliminary examination unless the warrant issued following grand jury indictment. K.S.A. 22-2202(16) defines a preliminary examination as "a hearing before a magistrate on a complaint or information to determine if a felony has been committed and if there is probable cause to believe that the person charged committed it."

Where there is evidence that a crime has been committed, the judge must determine whether there is probable cause to believe that the person charged committed the crime. There is no disagreement in this case that the felonies charged were committed. The question is whether there was probable cause to believe that the defendant committed the felonies. To prove probable cause, there must be sufficient evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. The evidence need not prove guilt beyond a reasonable doubt, only probable cause. *State v. Bell*, 259 Kan. 131, 132-33, 910 P.2d 205 (1996).

As noted by the majority opinion, this court requires a judge to pass judgment on the credibility of prosecution and defense witnesses when determining whether probable cause exists. *State v. Bell*, 259 Kan. at 133; *State v. Jones*, 233 Kan. 170, 174, 660 P.2d 965 (1983). In *Jones*, the question before this court was whether the trial court conducting the preliminary examination could consider testimony relating to an accused's defense. We concluded that a magistrate "has a duty not only to pass judgment on the credibility and competency of a witness, but may consider evidence of a defense." 233 Kan. at 174. In *Jones*, prosecution witnesses and the accused's witnesses presented directly conflicting testimony. The prosecution witnesses testified that the accused was the ag-

gressor and the accused's witnesses testified that he had to use the chain in self-defense to ward off the crowd. This court concluded that "a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution. Where there is some doubt that the defendant failed to act in self-defense, he must be bound over for trial." 233 Kan. at 174.

The issue of witness credibility at a preliminary examination must be approached with caution. When passing upon this question in *State v. Chapman*, 252 Kan. 606, 620, 847 P.2d 1247 (1993), we noted that the judge or magistrate must keep firmly in mind

"other basic principles applicable to consideration of sufficiency of the evidence at a preliminary examination:

'A preliminary examination differs from a trial. This court stated in *In re Mortimer*, 192 Kan. 164, 166, 386 P.2d 261 (1963):

' "There is a difference between the quantum of proof essential to a binding over for trial and that required to convict at the trial. The guilt or innocence of a defendant is not adjudged at a preliminary examination, and it is not necessary that evidence upon which a defendant is held for trial should be sufficient to support a conviction. It is enough if it shows that an offense has been committed and that there is probable cause to believe the defendant is guilty."

In the recent case of *State v. Hunter*, 232 Kan. 853, 854, 658 P.2d 1050 (1983), Justice Miller stated:

' "The reasonable doubt test has no place in a preliminary examination. As we have said many times, a magistrate conducting a preliminary examination serves a limited function: to determine whether it appears that a felony has been committed, and whether there is probable clause to believe that the accused committed it. It is an inquiry as to whether the defendant should be held for trial." '
233 Kan. at 172-73."

In *Chapman*, the district magistrate judge had dismissed certain charged offenses after the preliminary examination. No reasons were stated. 252 Kan. at 614. In the dissenting opinion in *Chapman*, Justice Abbott noted that the court did "not know what the trial judge's reasoning was." 252 Kan. at 623. Under these circumstances, Justice Abbott concluded that the State had failed to provide a record sufficient to review its claimed error and that the case should be affirmed.

In reversing the magistrate's decision, the majority noted that the bulk of the evidence at the preliminary examination was the

testimony of two convicted felons who may have hoped to lighten their own punishment by testifying against Chapman. The court acknowledged that "[i]t was the magistrate's duty to assess their credibility." 252 Kan. at 616. However, we noted that if the reasoning of *Jones* is followed,

"the court would not require the magistrate to discharge Chapman due to doubts about the witnesses' credibility *as long as the doubts did not obviate the appearance that he probably committed the felony with which he was charged.* 233 Kan. at 173-74. The following statement of the applicable principle appears in *Jones*: 'At the preliminary examination when there is a conflict in testimony, a question of fact exists for the jury, and the magistrate must draw the inference favorable to the prosecution.' 233 Kan. 170, Syl. ¶ 4." (Emphasis added.) 252 Kan. at 616.

The majority opinion in this case relies heavily upon *Chapman*, concluding that, "if the trial court had doubts about Giordano's credibility, those doubts should have been resolved in favor of the State so long as they did not obviate the appearance that Wilson probably committed the crime charged."

It is at this point that I part company with the majority opinion. *Chapman*, while good law in this state, does not support the majority's opinion that Wilson should be bound over for trial.

In *Chapman*, we noted that the bulk of the evidence "was the testimony of two convicted felons who may have hoped to lighten their own punishments by testifying against Chapman." 252 Kan. at 616. However, we also noted that the two witnesses were consistent in their testimony that Chapman was involved in the crimes charged and that there was no evidence to suggest that their testimony concerning Chapman's involvement in the crimes charged was otherwise impeached. Moreover, we noted that other circumstantial evidence admitted at the preliminary hearing supported Chapman's involvement in the crimes and also served to identify the drugs involved. Clearly, under those circumstances doubts about the two convicted felons who testified against Chapman "did not obviate the appearance that [Chapman] probably committed the crime[s] charged."

Unlike *Chapman*, here was no other circumstantial evidence involving the defendant in this case. Unlike *Chapman*, the impeachment did not involve general bias, prior convictions, or an interest

in the outcome. Rather, the impeachment in this case bore directly upon the credibility of a single witness identifying the defendant as the person who committed the crimes charged. The impeachment went to the heart of the State's burden at a preliminary hearing, *vis.*, probable cause that the defendant committed the crimes charged.

Unlike *Chapman,* we are not required in this case to guess at the reasons why the judge concluded that there was no probable cause to believe that the defendant committed the crimes charged. The majority quotes the judge's reasoning for his discharge of the defendant. The judge's reasons are amply supported by the evidence of record as well as by the law.

The State in this case elected to call a single witness. Unlike *Jones*, there was no conflict in the testimony. This is not a case of one witness saying one thing and another witness saying another. Rather, a single witness became sure that the defendant was involved in the crimes charged after the witness was shown photographs of people in the neighborhood.

According to Officer Giordano, she did not become sure that the person she saw was a male or female until later when she picked out a photograph at the police station. Giordano also admitted that at the time of the buy she could not tell whether the person she saw was black, white, or Hispanic. She identified the person as "tan." Giordano also testified that she thought the person was 5'7" tall. Giordano testified that she saw the person leave the house from a distance of about 30 feet and then again saw the person within 5 feet while the purchase of the cocaine occurred.

Three days later, Officer Giordano returned to the Saline County Sheriff's office to complete her written report. Prior to preparing her report, Deputy Sheriff James Hughes handed her five or six still photographs taken of people in the neighborhood where the cocaine buy occurred. These photographs were taken while officers were conducting surveillance of drug activities in the neighborhood. He admitted that he did not follow the usual procedures for a photographic lineup with a civilian witness. Rather, he simply gave Giordano the photographs and told her to find the one who looked like the person she saw. Hughes stated that he did so be-

cause he felt Giordano was properly trained and qualified. The photographs shown to Giordano were not introduced into evidence, and Deputy Hughes did not know if he still had the photographs. Giordano identified the defendant from the photographs.

The criteria applied in selecting photographs to be shown to the witness before the preliminary examination, the manner in which they were shown to the witness, and the unavailability of the photos at the time of the preliminary examination undermine the credibility of the witness' in-court identification. Deputy Hughes testified that he imposed no selection criteria on the pictures used and, instead, simply used pictures taken of people in the neighborhood. Rather than following the usual procedures for civilian witnesses, he simply gave Officer Giordano "five or six" photographs and told her to find the one that looked like the person she saw. The conclusion of the trial judge that the photo array tainted the in-court identification rests upon a solid legal foundation. See *State v. Nesmith*, 220 Kan. 146, 147-48, 551 P.2d 896 (1976) (test applied to determine whether photographic identification was impermissibly suggestive).

The faulty photo array, together with the effective cross-examination of the single witness called by the State to establish that the defendant committed the crimes charged, created the kind of doubts referenced in *Chapman*. The substantial legal and factual doubts obviated the appearance that the defendant probably committed the offenses with which she was charged. See 252 Kan. at 616.

As stated above, this court requires trial judges of this state to seriously consider the accused's defense and pass judgment on the credibility and competency of both the State's and the defendant's witnesses at the preliminary examination. 259 Kan. 131, Syl. ¶ 4. While our review is de novo, we should not forget that we review a record. The trial judge in this case had the opportunity to view the only witness called by the State, observe her testifying, and perform the responsibility set forth in *Jones* and *Bell*.

The State controls the prosecution of its case. It decides what evidence it will present at the preliminary examination to establish probable cause. Should the State fail to present sufficient evidence

at the preliminary examination that a crime has been committed and the defendant committed it, the defendant is discharged. However, the State may immediately refile the charges and proceed with additional evidence to be presented at a second preliminary hearing. Or, the State may choose to appeal the dismissal directly to this court.

In this case, the State chose to present a single witness at the preliminary hearing, attesting to the fact that the defendant committed the crimes charged. According to the record, Officer Giordano and an informant working with Officer Giordano were together when the drug transaction took place between the informant and the defendant. While Officer Giordano identified the defendant six times during her preliminary examination testimony, she did so only after she was given the opportunity to identify the defendant's photograph. Consistent with this court's prior decisions, the trial judge simply did not believe the in-court identification. The record read in a light most favorable to the State supports the trial court's decision.

Finally, there is a threshold the State must meet in presenting evidence at a preliminary hearing. Other evidence was apparently available to the State, but it elected not to present that evidence. Affirming the district court in this case leaves the State in much the same position, for it may file the same charges again and proceed with another preliminary hearing, this time presenting all of its evidence. If for some reason it has no additional evidence to present, then based upon this record and for the reasons stated above, the defendant should be discharged. Reversing the district court on the basis of this record is contrary to our decisions in *Jones, Bell,* and *Chapman* and has the tendency to discourage thorough preparation by the State in presenting its evidence at a preliminary examination.