NOT DESIGNATED FOR PUBLICATION

No. 115,302

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CORNELIUS ALLEN HARTZ,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed November 18, 2016. Reversed and remanded for reinstatement of the complaint.

*Elizabeth A. Billinger*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Reid T. Nelson*, of Capital Appeals and Conflicts Office, for appellee.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

*Per Curiam*:  The State appeals from the district court's decision to dismiss a charge of theft against Cornelius Allen Hartz after it determined that the State had presented insufficient evidence at the preliminary hearing to bind Hartz over for trial. From a review of the record, we find that although the evidence was conflicting, the State did present sufficient evidence to establish probable cause that the crime of theft had been committed and that Hartz committed the crime. Accordingly, we find that there was sufficient evidence to bind Hartz over for trial. Thus, we reverse the district court's decision and remand for reinstatement of the complaint.

1

FACTS

On December 5, 2015, Hartz was in the Famous Footwear store in Topeka trying on new shoes when another patron of the store ran out of the store with a pair of the store's shoes in his jacket. Approximately 10 minutes later, Hartz stood up while wearing a pair of Famous Footwear's shoes and—if the State's evidence is believed—began walking toward the exit in the new shoes. Hartz was confronted by an assistant manager before leaving the store and an argument ensued. Eventually, Hartz took off the new shoes and left the store. After exiting the store, a police officer questioned Hartz in the parking lot and ultimately arrested him.

On December 9, 2015, the State charged Hartz with one count of theft in violation of K.S.A. 2015 Supp. 21-5801(a)(1). We note that the record reflects that Hartz had two prior theft convictions. See K.S.A. 2015 Supp. 21-5801(b)(6). Subsequently, Hartz filed a pro se motion to dismiss, arguing that there was no evidence to support a theft charge against him because he did not remove the new shoes from the store.

The district court held a preliminary hearing on January 29, 2016. At the hearing, the State called the assistant manager who was working on December 5, 2015. She explained that the only people working at the store that evening were her and a 16-year-old sales associate. She also described the layout of the store with the men's shoe section to the left of the front door and the cash register to the right of the front door.

The assistant manager testified that Hartz came into the store that evening and went to the men's section to try on new shoes. While still wearing a pair of Famous Footwear shoes, Hartz began walking toward the front door of the store. According to the assistant manager, although she reminded Hartz that he was still wearing the shoes belonging to the store, he continued walking toward the door. The assistant manager then

2

locked the door and informed Hartz that if he did not want the new shoes, he should take them off.

In addition, the assistant manager testified that Hartz was not walking toward the cash register as one would expect if he intended to pay for the new shoes. The assistant manager also testified that while she was standing in front of the doorway, she told Hartz that the associate at the cash register could ring him up for the new shoes if he wanted to purchase them. Although Hartz threw his wallet to the floor and said he could pay for the shoes, he did not walk toward the register. Moreover, when the assistant manager looked at Hartz' wallet, she saw no cash or credit cards.

The assistant manager explained that she asked Hartz again if he would like the sales associate to ring him up, but that "he just kind of stood there yelling at me and getting . . . inches from my face." She told Hartz that if he did not want the new shoes, he should take them off. At that point, another customer intervened and told Hartz, "[Y]eah, just take the shoes off." Evidently, Hartz then went over to the other customer and threatened to hit him. Finally, Hartz took the new shoes off and threw them onto the floor. The assistant manager kicked the new shoes to the side, and Hartz started to walk out of the door before coming back in to get the shoes he had worn into the store. Finally, he left the store.

The assistant manager further testified that Hartz never made an attempt to pay for the new shoes. In addition, she testified that she never gave him permission to leave the store with the new shoes. She also reiterated that Hartz refused to take off the new shoes after her first request that he do so.

On cross-examination, she indicated that another man had come into the store immediately before Hartz. Although the assistant manager could not tell for sure, she thought it was possible that the two were together because Hartz was being loud and

3

distracting. She recalled that while she was at the cash register ringing up a customer, the man who had come in at about the same time as Hartz ran out of the store with a pair of new shoes hanging out of his jacket. Because she could not leave the store, the assistant manager continued helping customers that were in the store. She indicated that she did not lock the door or call the police at that point.

The assistant manager testified that she then had the young sales associate go help customers at the cash register so she could assist Hartz. According to the assistant manager, she started to show Hartz another pair of new shoes, but he said he preferred the ones he was currently trying on. He then put his old shoes inside the shoebox from which he had removed the new shoes, left the box sitting on a bench, and began walking toward the front door wearing the new shoes. She estimated that approximately 10 minutes had passed since the other man had ran out of the store with new shoes. As Hartz was walking, he evidently told the assistant manager, "[Y]ou can put the box back, I don't want them." In response, she said, "[B]ut you're wearing them."

In the opinion of the assistant manager, Hartz was acting like he was walking to the front door as he was wearing the new shoes. Once he reached the tile section next to the front door, she locked the door so he could not exit. However, the assistant manager testified that she unlocked the door shortly after locking it because Hartz got upset. The assistant manager indicated that she repeatedly asked Hartz to either take off the new shoes or to pay for them before he finally took them off. She explained that when he threw his wallet down, it landed on the tile near the front door. Evidently, it was the customer who Hartz threatened to fight who had called the police.

Following cross-examination, the district court judge asked the assistant manager some additional questions. Specifically, the judge asked whether the assistant manager thought Hartz was going to walk out the door with new shoes, and if that was when she decided to lock the door. She answered, "Yes, sir." He then asked at what point did she

4

think Hartz was going to leave the store with the shoes, and she answered, "When he said . . . I could put the box back, he didn't want those shoes, and reached, like, the tile area [near the front door] and was angled towards the door, not the register."

Topeka Police Officer Eric Seibel also testified at the preliminary hearing. He indicated that he was called to the Famous Footwear because of a possible theft. When he arrived, he found Hartz in the parking lot. Officer Seibel testified that Hartz was wearing socks, carrying shoes, and faintly smelled of alcohol when he first contacted him. Officer Seibel told Hartz that he had been called to the store because a person matching his description was possibly trying to steal new shoes. At that point, Officer Seibel testified that Hartz became very loud and argumentative. Accordingly, Officer Seibel decided to detain Hartz by handcuffing him.

Topeka Police Officer Scott Sinsel testified that the assistant manager told him that an individual ran out of the store with new shoes and that a second individual attempted to leave the store with new shoes. The assistant manager reported that she temporarily detained the second man to ask him why he was attempting to leave with the new shoes. At that point, a verbal altercation occurred that the store manager indicated placed her in a state of fear for her safety.

Officer Sinsel also testified that he spoke to Hartz while he was in the back of a police vehicle outside of the store. According to Officer Sinsel, Hartz was agitated and it took several attempts to explain the situation and to read his *Miranda* rights to him. Officer Sinsel indicated that he eventually picked up Hartz' wallet from the floor near the door of the store and that he did not remember seeing any money in it. Officer Sinsel further testified that Hartz told him that he was simply wearing the new shoes around the store and that he attempted to pay for them.

5

Hartz testified on his own behalf and stated that he went to Famous Footwear alone. According to Hartz, he tried on a pair of new shoes, stood up, and took two steps in them. At that point, the assistant manager locked the front door of the store. He walked up to her and asked why she had locked the door. In response, she allegedly said that it was because the guy he was with just ran out of the store with a pair of new shoes. Hartz told her that he had not come there with anyone, and he was not there to steal shoes. Hartz testified that he immediately kicked off the new shoes, grabbed his shoes out of the box he had put them in, and walked out the door of the store. He also testified that before he left, he had "words with the employees about how they treat customers." Additionally, he testified that he had money in his wallet.

After the evidence was presented, the State moved to add a charge of disorderly conduct under K.S.A. 2015 Supp. 21-6203(a)(3). The prosecutor then argued that the State had presented sufficient evidence to establish probable cause that a theft had occurred. The prosecutor argued that Hartz refused to remove the shoes after repeated requests that he do so constituted evidence of unauthorized control over the property. Defense counsel argued that there was no evidence that Hartz exerted unauthorized control over the new shoes. Defense counsel also argued that when Hartz was asked to pay or to take the new shoes off, he took them off.

After considering the evidence presented and arguments of counsel, the district court determined that the State had failed to provide probable cause that Hartz committed the crime of theft. In so ruling, the district court stated:

> "My huge difficulty here is that, at most, I would have an attempted theft as opposed to a theft. I'm not even sure that there's a theft here. There are some comments and some assumptions that I think that [the assistant manager] made. She had—listening to her voice, her demeanor, she was extremely nervous. It's clear she was extremely scared.

6

"As the diagrams were on the chalkboard, there were different issues about who was where, what was where, and most of the conversation was small-talk type conversation and I have completely different pictures as to what happened with regard to the shoes, walking to the door, when the door was locked, who was where, what the contact was. And I still have difficulty with [the assistant manager's] recall. Not that she is a liar, but more out of what she recalls, when she recalls."

The district court then held that it was not going to bind Hartz over on the theft charge, stating:

"I do not think there is sufficient evidence in weighing—it's everybody—well, there's one person who was there from the position that Mr. Hartz did it. There is one person from the position that Mr. Hartz did not do it. It's not a one to one, they cancel each other out but the recall, the Court has difficulty there so I am not going to bind the defendant over on the theft charge."

The district court, however, determined that it would allow the State to amend the complaint to include the charge of disorderly conduct, which was a class C misdemeanor, because the State presented evidence supporting that charge and the defense had agreed that it was sufficient. Thereafter, the State filed a notice of appeal on February 8, 2016.

On February 10, 2016, the State filed an amended complaint in which it charged Hartz with disorderly conduct. On the same day, however, the district court filed a recall of the warrant and entered an order dismissing all of the charges against Hartz without prejudice.

ANALYSIS

On appeal, the only issue presented is whether the district court erred in dismissing the theft charge at the preliminary hearing. K.S.A. 2015 Supp. 22-2902(3) provides: "If from the evidence it appears that a felony has been committed and there is probable cause

7

to believe that a felony has been committed by the defendant, the magistrate shall order the defendant bound over to the district judge having jurisdiction to try the case." As such, at a preliminary hearing, the district court must examine the evidence to determine (1) whether a crime has been committed and (2) whether there is probable cause to believe that the accused committed the crime. *State v. Washington*, 293 Kan. 732, 733, 268 P.3d 475 (2012).

Under the first consideration, a court may find that a crime has been committed based on the evidence presented at the preliminary hearing if "'there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that it appears a felony has been committed.' [Citation omitted.]" *State v. Bell*, 259 Kan. 131, 132, 910 P.2d 205 (1996). Once the court has determined that a crime has been committed, the court must then determine whether there is probable cause to believe that the person charged committed that crime. 259 Kan. at 132. Probable cause exists at a preliminary hearing when the evidence is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *Washington*, 293 Kan. at 734.

In reviewing the evidence, the court must draw inferences in favor of the State. Moreover, the evidence only needs to show probable cause and not guilt beyond a reasonable doubt. Even if the evidence is weak, the defendant should be bound over for trial if the evidence tends to establish that the offense was committed and that the defendant committed it. *Washington*, 293 Kan. at 733-34. The State may appeal the district court's dismissal of a charge under K.S.A. 2015 Supp. 22-3602(b). On appeal, we have unlimited review over the district court's probable cause finding at a preliminary hearing. *Washington*, 293 Kan. at 734.

8

Here, the State charged Hartz with theft under K.S.A. 2015 Supp. 21-5801(a)(1), which states that theft is "[o]btaining or exerting unauthorized control over property" if the act is "done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property." In other words, to commit theft, a person must have the specific intent to deprive an owner of his or her property. Intent "'may be shown by circumstantial evidence, and a person is presumed to intend all the natural consequences of his [or her] acts. [Citation omitted.]'" *State v. Kettler*, 299 Kan. 448, 467, 325 P.3d 1075 (2014) (quoting *State v. Childers*, 222 Kan. 32, 37, 563 P.2d 999 [1977]). Accordingly, the State only needed to have presented evidence that would allow a factfinder to infer that Hartz intended to commit theft. See *State v. Roth*, No. 113,923, 2016 WL 3460383, at *3 (Kan. App. 2016) (unpublished opinion).

In this case, there is not a question about who committed the alleged crime. Instead, the issue is whether sufficient evidence exists to find that the crime of theft was even committed. When the district court evaluates the evidence presented at the preliminary hearing, it must pass judgment on the credibility and competency of the witnesses presented by both sides and it also must seriously consider any defenses presented by the defendant. *Bell*, 259 Kan. at 133. However, "[i]f there is a conflict in witness testimony that creates a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State. [Citation omitted.]" *Bell*, 259 Kan. at 133.

In *State v. Chapman*, 252 Kan. 606, 847 P.2d 1247 (1993), the district court dismissed certain charges after a preliminary hearing. On appeal, the Kansas Supreme Court noted that most of the evidence presented at the preliminary hearing came from two witnesses with credibility issues. Nevertheless, our Supreme Court found that the only way the court could have dismissed the charges based on issues with the credibility of witnesses was if the questions regarding credibility precluded the inference that the defendant probably committed the offenses. 252 Kan. at 616-17. Ultimately, the charges

9

against Chapman were reinstated because there was sufficient—although circumstantial—evidence to bind Chapman over for trial. 252 Kan. at 617-22; see also *State v. Wilson*, 267 Kan. 530, 536, 986 P.2d 365 (1999) (finding the issue of whether identification of the defendant was tainted was a question more properly resolved in a motion to suppress after the defendant was bound over for trial).

As Hartz candidly admits, asportation—or the act of carrying away or removing property—is not required to complete a taking pursuant to Kansas law. See *State v. Brown*, 300 Kan. 542, 557, 331 P.3d 781 (2014); Black's Law Dictionary 136 (10th ed. 2014). Moreover, in determining whether someone has committed exercised unauthorized control over property in a self-service store:

> "the focus should be on the level of control a customer is permitted to exercise over merchandise . . . [C]ustomers are obviously authorized to possess merchandise while shopping for the purpose of presenting items for payment and completion of a sale. However, the store does not grant its customers the authority to remove items from their packaging and/or to conceal them to facilitate their removal from the store without paying for them. Such acts constitute the exertion of unauthorized control over the property, which, when coupled with the requisite mens rea, completes a theft." *State v. Plummer*, 295 Kan. 156, 166, 283 P.3d 202 (2012).

In the present case, it was undisputed that Hartz tried on a pair of new shoes in the store, he put the shoes he had worn into the store inside the new shoe box, and he was still inside the store when confronted by the assistant manager. It is at that point that the testimony of the assistant manager and Hartz diverges. As noted above, we must review the testimony presented at a preliminary hearing in a light most favorable to the State.

- The assistant manager testified that:
  - a person who had come into Famous Footwear with Hartz had ran out of the store with a pair of new shoes in his jacket,

10

- after Hartz had placed his old shoes in a Famous Footwear box, he stood up—with new shoes still on his feet—and walked toward the exit rather than towards the cash registers,
- she believed that Hartz was intending to leave the store based on the angle in which he was walking,
- notwithstanding the fact that he was wearing the new shoes, Hartz told the assistant manager that he did not want them and that she could put the box back,
- when she mentioned to Hartz that he was still wearing the new shoes, he made no attempt to take them off or to pay for them,
- when Hartz reached the tile area by the front door with the new shoes still on his feet, she locked the door briefly to keep him in the store,
- even after she unlocked the front door, Hartz continued to stand in the entryway wearing the new shoes and did not walk toward the register to pay for them,
- instead, Hartz threw his wallet to the ground, stating that he could pay for the new shoes,
- she did not see any money or credit cards in the wallet,
- when another customer told Hartz to take off the new shoes, he threatened to hit the other customer, and
- Hartz took the new shoes off and left the store.

- On the other hand, Hartz testified that:
  - after trying on a pair of new shoes, he stood up and took about two steps in them when the assistant manager locked the front door,
  - he walked up to her and asked her why she locked the door,

11

- the assistant manager told him that she did so because a man who she believed was with him had just ran out of the store with some new shoes,

- he told the assistant manager that he did not come to the store with anyone else and that he was not there to steal shoes, and

- he immediately kicked off the new shoes and grabbed his shoes out of the box before walking out the door.

Certainly, one could question whether this evidence is sufficient to obtain a theft conviction beyond a reasonable doubt. Moreover, one could question whether the State has overcharged in this case. However, it is not the role of the court at a preliminary hearing to determine whose version of events to believe.

Although courts can consider the competency of the State's witnesses presented at a preliminary hearing, "[t]he question of the credibility of a witness at a preliminary examination must be approached with caution." *Wilson*, 267 Kan. at 535; *Bell*, 259 Kan. 131, Syl. ¶ 4. Courts should not dismiss a charge due to doubts about a witness' testimony "as long as the doubts did not obviate the appearance that [the defendant] probably committed the felony with which he [or she] was charged." *Chapman*, 252 Kan. at 616.

Here, the State's main evidence supporting a finding that Hartz intended to permanently deprive the store of it shoes was the assistant manager's testimony that she believed that Hartz' actions revealed an intent to steal new shoes from the Famous Footwear store. Although perhaps impeachment testimony may be presented at trial, we find nothing in the transcript of the preliminary hearing to suggest that the assistant manager lacked credibility. Likewise, there is nothing in the record to show that the assistant manager had any reason to fabricate her testimony. Thus, we find that a trial— not a preliminary hearing—is the appropriate place to resolve this case's questions of fact. See *State v. Jones*, 233 Kan. 170, Syl. ¶ 4, 660 P.2d 965 (1983).

12

As indicated above, there is no requirement that a person actually leave a store in order to be convicted of theft. Rather, there must be a finding that the person exercised unauthorized control over the property of another. Although there may or may not be enough evidence in the present case to obtain a conviction, we conclude that there is enough evidence—as viewed in the light most favorable to the State—to bind Hartz over for trial on the theft charge.

Reversed and remanded for reinstatement of the complaint.