No. 112,000

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DUSTIN ALEX EVANS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. Likewise, when the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo.

2.

K.S.A. 2014 Supp. 21-5231 provides immunity from prosecution for any person who lawfully uses force in defense of a person or property.

3.

The Kansas Supreme Court has determined that the standard of proof for whether a defendant is entitled to immunity from criminal prosecution is probable cause. The State bears the burden of establishing proof that the force used by the defendant was not justified as part of the probable cause determination under the immunity statute.

4.

The Kansas Court of Appeals has ruled that in considering a defendant's pretrial motion for self-defense immunity under K.S.A. 2014 Supp. 21-5231, consistent with

1

making a probable cause determination at a preliminary hearing, the district court must view the evidence in a light favoring the State, meaning conflicts in the evidence must be resolved to the State's benefit and against a finding of immunity.

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed October 23, 2015. Reversed and remanded with directions.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Thomas J. Bath, Jr.*, and *Tricia A. Bath*, of Bath & Edmonds, P.A., of Overland Park, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and JOHNSON, S.J.

MALONE, C.J.:  The State appeals the district court's decision to dismiss the aggravated battery charge against Dustin Alex Evans based upon a finding that Evans qualified for self-defense immunity under K.S.A. 2014 Supp. 21-5231. The State charged Evans with aggravated battery arising from an altercation with Jose Luis Pena, Jr., that took place in Evans' garage. During the altercation, Evans stabbed Pena, who was unarmed, with a sword. The district court held a pretrial hearing and, after weighing the conflicting evidence, found that the State had failed to establish probable cause that Evans' use of force in defending himself was unlawful. Thus, the district court found that Evans was immune from prosecution and dismissed the complaint. The only issue on appeal is whether the district court erred in applying K.S.A. 2014 Supp. 21-5231, which grants a suspect immunity from prosecution based upon the lawful use of self-defense.

We will review the facts in detail. On the evening of June 18, 2013, Evans and Pena each went to different bars in Overland Park. The evidence indicates that both men became intoxicated over the course of the evening. At approximately 3 a.m. on June 19,

after the bars closed, Pena stopped at Evans' house, about four houses from his own, to talk to Jason Dalton, who had given Evans a ride home from the bar. When Dalton left, Pena knocked on Evans' front door. Evans came to the door and allowed Pena to enter the house. Evans' friend, Jarod King, also was at the house, and the three men eventually moved out into the garage. Pena's wife joined the men for awhile, but she and King eventually left, leaving only Pena and Evans in the garage.

Evans suggested a wrestling match and pulled some wrestling mats from the garage and spread them in the driveway. The two men apparently agreed to a "grappling" match in which the winner would be the person who obtained a "tap out" by the other.

Evans and Pena provided different accounts of what happened next. Evans later told police that Pena covered Evans' mouth with his hand during the wrestling match. Evans attempted to move Pena's hand and became frantic when Pena kept replacing his hand over Evans' mouth. Evans was unable to breathe. He managed to break free, stood up, and moved into the garage. Evans accused Pena of trying to kill him. Pena followed Evans into the garage, threatening to kill Evans and his family. Evans repeatedly told Pena to step back, but Pena continued to advance toward Evans. Evans retrieved a katana-style sword he had stored in the garage and pointed it at Pena. When Pena continued to advance towards Evans, he stabbed Pena once in the chest with the sword.

Pena later testified that he accidentally placed his hand against Evans' throat during the wrestling match as he attempted to gain a better position. Evans jumped up, visibly angry, and walked into the garage. Pena got up and walked along the outside of the garage, asking Evans what was wrong and whether he was okay. Evans accused Pena of trying to kill him. As they talked, Pena became distracted by something and looked over his shoulder. Pena stated that as he was turning back to Evans, he realized that Evans was trying to stab him with a sword. Pena raised his arm in defense and prevented the first two blows, but he was stabbed in the chest on the third attempt. Pena noticed

3

blood gushing out of his chest and pleaded with Evans to call someone to help. Evans responded, "Fuck you, mother fucker, die. That's what you get." Pena retreated out of the garage and staggered down the driveway into the neighbor's yard, leaving a blood trail as he moved. He pounded on the neighbor's door several times before losing consciousness.

Evans eventually called 911 and reported that he had stabbed Pena. Originally, Evans only reported that he stabbed a man who had come onto his property. When the dispatcher asked for an explanation of the events that preceded the stabbing, Evans explained that he had been wrestling and knew the victim. Emergency personnel responded to the call and Pena was rushed to the hospital. At the hospital, Pena wavered in and out of consciousness. When asked why Evans stabbed him, Pena indicated that he did not know the reason. Pena stated, "One minute we were fine, the next we weren't."

Pena received emergency surgery. The treating physician informed an officer that Pena had received a puncture into his chest measuring approximately 3 inches wide and about a foot deep, cutting through a rib bone. The wound cut Pena's liver and pancreas and nicked the pericardium, the sac surrounding the heart. Though the doctors indicated that the injuries were life threatening, Pena survived. A sample of Pena's blood was taken at the hospital, and later testing indicated a blood-alcohol content of .20.

The police arrested Evans on the night of the incident. On June 20, 2013, the State charged Evans with aggravated battery under K.S.A. 2014 Supp. 21-5413(b)(1)(A) (intentionally causing great bodily harm). At the preliminary hearing on September 11, 2013, during which only Pena testified, the district court found probable cause to believe Evans committed aggravated battery and bound him over for trial.

On January 16, 2014, about 1 week before Evans' scheduled jury trial, Evans filed a "Motion to Present the Jury a Complete Defense." Evans also filed a "Motion to Enforce K.S.A. 21-5231." Evans' motions did not seek dismissal of the aggravated

4

battery charge. Instead, Evans asked the district court to conduct an analysis in conjunction with the jury trial in order to determine whether Evans was entitled to self-defense immunity. The State filed a memorandum in response to Evans' motions.

The district court held a hearing on the motions on April 7, 2014. The State presented the preliminary hearing transcript as evidence, and the parties stipulated to numerous exhibits, including police reports of the investigation surrounding the stabbing incident, crime scene reports, medical reports, photographs, and recordings of the 911 call and Evans' interviews with the police. In addition, Evans called as witnesses five law enforcement officers who had participated in the investigation.

The stipulated evidence presented at the hearing revealed some inconsistencies in Pena's version of the events. In his preliminary hearing testimony, Pena testified that after the wrestling match abruptly ended, he never followed Evans back into the garage. But the undisputed blood evidence indicated that the stabbing took place in the back area of the garage next to the door going into the house. Also, Pena testified at the preliminary hearing that Evans brandished the sword three times and Pena deflected the first two blows causing injury and scarring to his forearm. But the medical evidence indicated there were no injuries on Pena's arms. Finally, the stipulated evidence included a report from an emergency room doctor and director of a wound care center who opined that the stabbing took place when Evans was in a defensive posture with both hands on the sword. After receiving the evidence, the district court took the matter under advisement.

On April 25, 2014, the district court filed a comprehensive order dismissing the State's case against Evans. Relying primarily upon *Lemons v. Commonwealth*, 2012 WL 2360131 (Ky. App. 2012) (unpublished opinion), *rev'd* 437 S.W.3d 708 (Ky. 2014), the district court found that it was permitted to weigh the credibility of the evidence presented on the issue of self-defense immunity. After weighing the evidence, the district court found that the State had failed to establish probable cause that Evans' use of force

5

was unlawful. The district court found that Evans "was reasonably justified under these facts in using force because Pena was clearly a threat and a reasonable person in his position would have felt it necessary to defend himself and/or his home." Accordingly, the district court granted self-defense immunity to Evans and dismissed the charge of aggravated battery. The State filed a motion to reconsider, which the district court denied. The State then filed a timely notice of appeal.

On appeal, the State contends that the district court erred in applying K.S.A. 2014 Supp. 21-5231, which grants suspects immunity from prosecution based upon self-defense. The State argues that the district court improperly weighed the conflicting evidence instead of viewing the evidence in a light most favorable to the State. The State contends that the evidence did not support a finding that Evans' use of deadly force was objectively reasonable, and, thus, the court erred in granting Evans immunity.

Evans responds that the State cannot establish that the district court applied the wrong standard to determine whether he was immune from prosecution pursuant to K.S.A. 2014 Supp. 21-5231. Evans contends that the district court should not be required to view the evidence in the light most favorable to the State at a hearing on a motion for self-defense immunity. In the alternative, Evans argues that even under a standard requiring the court to view the evidence in the light most favorable to the State, the evidence supported the district court's decision to grant him immunity.

Resolution of this issue involves the interpretation and application of K.S.A. 2014 Supp. 21-5231 and related self-defense statutes. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014). Likewise, when the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo. *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011).

6

In 2010, the Kansas Legislature enacted a series of statutes addressing the use of force, including the use of deadly force, in the defense of a person or property, including a person's dwelling. See K.S.A. 2014 Supp. 21-5220 *et seq.* The statutes are commonly known as this state's "stand-your-ground law." K.S.A. 2014 Supp. 21-5222 states:

"(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person."

K.S.A. 2014 Supp. 21-5223 states:

"(a) A person is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent or terminate such other's unlawful entry into or attack upon such person's dwelling, place of work or occupied vehicle.

"(b) A person is justified in the use of deadly force to prevent or terminate unlawful entry into or attack upon any dwelling, place of work or occupied vehicle if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or another.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person's dwelling, place of work or occupied vehicle."

K.S.A. 2014 Supp. 21-5230 states:

"A person who is not engaged in an unlawful activity and who is attacked in a place where such person has a right to be has no duty to retreat and has the right to stand such person's ground and use any force which such person would be justified in using under article 32 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or K.S.A. 21-5202 through 21-5208, 21-5210 through 21-5212, and 21-5220 through 21-5231, and amendments thereto. "

Finally, K.S.A. 2014 Supp. 21-5231 provides immunity from prosecution for any person who lawfully uses force in defense of a person or property. That statute states:

"(a) A person who uses force which, subject to the provisions of K.S.A. 2014 Supp. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 2014 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.
"(b) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (a), but the agency shall not arrest the person for using force unless it determines that there is probable cause for the arrest.
"(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2014 Supp. 21-5231.

In *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013), the Kansas Supreme Court determined that the standard of proof for whether a defendant is entitled to immunity from criminal prosecution is probable cause. Furthermore, the State bears the burden of establishing proof that the force used by the defendant was not justified as part of the probable cause determination under the immunity statute. 296 Kan. at 845.

8

Immunity is separate and distinct from the affirmative defense of self-defense. A prosecutor must rebut a claim of immunity before a case can go to trial. This procedure differs from when a defendant raises an affirmative defense which must be established at trial. Generally, in order for a defendant to be bound over for trial, it must only appear from the evidence that a felony has been committed and there is probable cause to believe the defendant committed it. See K.S.A. 2014 Supp. 22-2902(3). But as noted in *Ultreras*, "once a defendant raises justified use-of-force immunity before a court, a probable cause determination must also include a determination that the defendant's use of force was not justified under [the statutes]. Hence, the statute as written with a probable cause standard adds an additional requirement and is meaningful." 296 Kan. at 844.

While the *Ultreras* court declined to establish procedures for immunity hearings, this court addressed the procedural treatment of motions for self-defense immunity in *State v. Hardy*, 51 Kan. App. 2d 296, 300-04, 347 P.3d 222 (2015), *petition for rev. filed* April 22, 2015. In *Hardy*, this court held that in considering a motion for self-defense immunity under K.S.A. 2014 Supp. 21-5231, a district court must conduct an evidentiary hearing, unless the parties otherwise stipulate to the factual record, and the rules of evidence apply. Whenever possible, the district court should combine the immunity hearing with the defendant's preliminary hearing. At the evidentiary hearing, the State has the burden to establish probable cause that the defendant acted without legal justification in using force. This court further held that consistent with making a probable cause determination at a preliminary hearing, the district court must view the evidence in a light favoring the State, meaning conflicts in the evidence must be resolved to the State's benefit and against a finding of immunity. 51 Kan. App. 2d at 304.

Here, there can be no real dispute that the force used by Evans was deadly force, as that term is statutorily defined. See K.S.A. 2014 Supp. 21-5221(a)(2) ("'Use of deadly force' means the application of any physical force described in paragraph (1) which is likely to cause death or great bodily harm to a person."). The sword wound entered Pena's

9

chest cavity approximately a foot, cutting a rib, his liver, his pancreas, and his pericardium. Even after stabilizing Pena in the emergency room for surgery, the doctors told law enforcement that his condition was precarious.

Therefore, for Evans' use of force to be justified, the evidence must establish that he reasonably believed that the use of deadly force was necessary to prevent imminent death or great bodily harm to himself. See K.S.A. 2014 Supp. 21-5222(b). Evans had no duty to retreat from Pena. K.S.A. 2014 Supp. 21-5222(c). The reasonableness of the need for deadly force is statutorily presumed if the person against whom the force is used has unlawfully or forcefully entered a dwelling. K.S.A. 2014 Supp. 21-5224(a)(1)(A). But here, Pena was an invited guest at Evans' home and the two men initially had agreed to engage in a friendly wrestling match before tempers flared and the encounter became combative.

The evidence presented to the district court on Evans' use of deadly force in self-defense was highly conflicting. As is clear from the district court's order granting immunity, the district court gave little credibility to Pena's sworn testimony provided at the preliminary hearing. In finding that the State failed to present sufficient evidence to establish probable cause that Evans' use of force was unlawful, the district court stated:

> "The State did not consider the whole picture in this case when it charged Defendant with aggravated battery a mere six hours after being taken into custody. More than one police officer involved in this case admitted to having only a cursory knowledge of immunity statutes in general, and virtually no knowledge of this state's 'stand-your-ground law.' Although Defendant cited to this type of immunity several times during the course of his custody (referring to the 'new castle law'), there was no indication by Overland Park police that Defendant's assertions were taken seriously or, in fact, considered at all. Defendant remained cooperative throughout questioning (after making the emergency call for medical assistance for Pena) and was consistent in the relaying of events to various officers, while Pena has given various accounts of that night to police,

10

the State, and this Court. Based on the record before the State at the time of arrest and charging, self-defense immunity should have been considered. The subsequent investigation revealed facts favorable to Defendant in his claim of self-defense, none of which were acknowledged or understood prior to the immunity hearing."

The district court granted Evans' motion for immunity, in part, because it found Evans' version of the events to be more credible than Pena's testimony. But it also appears that the district court granted the immunity motion, in large part, because the court found that the officers investigating the case were unaware of this state's "stand-your-ground" law. The district court determined that the State rushed to judgment by charging Evans with a crime without fully investigating his claims of self-defense.

Whether the district court erred in granting immunity to Evans turns on whether the district court was required to view the conflicting evidence in a light favoring the State. Evans argues that, if the district court is required to interpret the evidence in a light most favorable to the State and is not permitted to weigh credibility, the immunity granted by statute becomes meaningless as the State will always be able to present some evidence that the defendant failed to act justifiably, usually in the form of the victim's statement. Evans also points out that in ruling on other pretrial motions such as a suppression motion, the district court is not obligated to view the evidence in a light most favorable to the State but must make findings of fact and even credibility determinations.

As this court noted in *Hardy*, a pretrial motion to suppress evidence typically deals with fact issues only indirectly bearing on guilt or innocence, and jurors will not be called upon to decide those same fact issues at trial. 51 Kan. App. 2d at 301. But if a district court is granted broad authority to weigh conflicting evidence and assess credibility in granting immunity, as Evans advocates, the court effectively supplants the jury in this traditional role. As stated by this court in *Hardy*:

11

"The issue of self-defense immunity is inextricably bound up in guilt or innocence, and consistent with the strong preference for jurors making fact determinations in criminal cases, the preliminary examination standard [of viewing the evidence in a light favoring the State] preserves that function. A district court would otherwise usurp that role in considering self-defense immunity." 51 Kan. App. 2d at 300-01.

A defendant's motion for self-defense immunity is a *dispositive* motion. If granted by the district court, the State's charges are dismissed and the defendant is immune from prosecution. As with any dispositive motion filed before the parties are allowed to present their complete evidence at trial, such as a motion for summary judgment in a civil case, the evidence must be weighed in the light most favorable to the nonmoving party. Thus, in ruling on Evans' motion for self-defense immunity, the district court should have been required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling was sought.

In dismissing the aggravated battery charge against Evans, the district court found that it was permitted to weigh the credibility of the evidence presented on the issue of self-defense immunity. We agree with the district court, in part. Our Supreme Court has stated that when evaluating evidence presented at a preliminary hearing, the judge must consider the defendant's defense and pass judgment on the credibility of both the State's and the defendant's witnesses. See *State v. Bell*, 259 Kan. 131, 133, 910 P.2d 205 (1996). But generally, "[i]f there is a conflict in witness testimony that presents a question of fact for the jury, the preliminary hearing judge must accept the version of the testimony which is most favorable to the State." 259 Kan. at 133. Only if doubts about an accuser's testimony are so strong that they "obviate the appearance that [the defendant] probably committed the felony with which he was charged," will discharge of the defendant be appropriate. *State v. Chapman*, 252 Kan. 606, 616, 847 P.2d 1247 (1993).

Here, Pena testified that he was stabbed just outside the entrance of the garage, but the undisputed blood evidence indicated that he was stabbed in the back corner of the

12

garage. Pena testified that he blocked the first two blows with his arms, but the medical evidence indicated there were no injuries on his arms. Although the stipulated evidence presented to the district court revealed some inconsistencies in Pena's version of the events, these inconsistencies were not so strong that they "obviate[d] the appearance" of probable cause that Evans committed the felony for which he was charged, even when his evidence of justification is considered. See *Chapman*, 252 Kan. at 616.

This was not a situation where an intruder broke into Evans' home. Evans and Pena were neighbors. Evans invited Pena into his home on the night in question. At Evans' suggestion, the two men initially agreed to engage in a friendly wrestling match. Tempers flared and the encounter became combative, ending with Evans using a sword to stab Pena, who was unarmed. The evidence of what happened in the final moments before the stabbing was highly conflicting, and Evans and Pena were the only witnesses.

If the district court was not required to view the evidence in a light favoring the State, the judge could have found in favor of either Evans or the State and there was sufficient evidence that would have supported either finding. But if the judge had viewed the evidence in a light favoring the State, it was sufficient to find probable cause to rebut Evans' claim of immunity and submit the case to a jury.

According to this court's published opinion in *Hardy*, in considering a motion for self-defense immunity under K.S.A. 2014 Supp. 21-5231, the district court must view the evidence in a light favoring the State. 51 Kan. App. 2d at 304. Although this court's decision in *Hardy* is not final, a majority of this panel adopts the reasoning in that case as applied to the facts herein. Because the district court failed to view the conflicting evidence in a light favoring the State, we conclude the district court erred in granting self-defense immunity to Evans and dismissing the charge of aggravated battery. We reverse the district court's judgment and remand with directions to reinstate the complaint. We

13

assume that a timely petition for review will prevent the remand order from being filed until the Kansas Supreme Court has a chance to review this case and *Hardy*.

Reversed and remanded with directions.

* * *

ARNOLD-BURGER, J.: I respectfully dissent from the majority's reversal of the district court's finding that the State failed to establish probable cause to believe that Dustin Alex Evans acted unlawfully. I would affirm District Judge Ryan's well-reasoned opinion dismissing the charges against Evans based on statutory immunity.

Although we know from *State v. Ultreras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013), that the State has the burden of production on questions of immunity under K.S.A. 2014 Supp. 21-5231, and that the standard of proof is probable cause, the Supreme Court has declined to establish procedures for immunity hearings. Likewise, the statute itself provides no guidance. See K.S.A. 2014 Supp. 21-5231. So the appellate courts are left to determine the appropriate procedure to be used. Courts often make such determinations by seeking guidance from similar situations where procedures have been firmly established. The majority here and the panel in *State v. Hardy*, 51 Kan. App. 2d 296, 347 P.3d 222 (2015), *petition for rev. filed* April 22, 2015, found that the analogous situation was preliminary hearings, primarily because such hearings also use a probable cause standard. So the procedure for reviewing the evidence, they argue, should be the same. They reach the conclusion that, like a preliminary hearing, the district court must view the evidence in a statutory immunity hearing in the light most favorable to the State. 51 Kan. App. 2d at 304. I disagree with such an approach in a case involving the legal question of whether immunity from prosecution exists and will attempt to explain my rationale later in this opinion. But even if the majority is correct regarding the applicable procedure, I also firmly believe that the district court was correct in concluding that the

14

State failed to meet its burden of production under the facts of this case. So I will begin there after a review of some relevant facts.

## FACTS

I have no dispute with the facts as set out in the majority opinion but would like to further examine some of those facts. First, both Jose Luis Pena, Jr., and Evans agree that Evans' air supply was cut off by Pena during the wrestling match, although they disagree as to the method by which this occurred. Evans claims it was by Pena repeatedly putting his hand over Evans' mouth and moving his head, while Pena claims that during the process of moving Evans' head around, his chest covered Evans' face and Pena put his hand on Evans' throat and "pushed off." They both agree that Evans extricated himself from the match, ran into the garage, and accused Pena of purposefully trying to kill him. Although Pena claimed that he never entered the garage—instead being subjected to a surprise attack from Evans outside the garage—the undisputed blood evidence supported Evans' claim that the stabbing took place in the back area of the garage next to the door going into the house, suggesting Evans was backed into a corner by Pena. Likewise, an uncontroverted expert report from an emergency room doctor and director of a wound care center opined that the stabbing took place at a time when Evans was in a defensive posture with both hands on the sword. Moreover, and contrary to his initial report to police in which he claimed that the first he saw the sword was when it stabbed him in the chest, Pena testified at the preliminary hearing that Evans brandished the sword three times: once causing injury and scarring to his forearm, once in a manner that was deflected by Pena, and finally when causing the damaging blow to the chest. However, the undisputed medical evidence concluded that there were no injuries on Pena's arms. Finally, although both parties were intoxicated, Pena's blood alcohol content was .20, almost 3 times the legal limit, perhaps influencing his recollection of events. Friends indicated that when Pena becomes intoxicated he gets very "handsey," "touching people, patting them on their backs, trying to put them in headlocks, and stuff like that."

15

In sum, although there may have been conflicting stories about what happened, the uncontroverted physical evidence clearly supported Evans' version of the events and negated Pena's version. Based on this evidence, the district court found that the State had failed to meet its burden of production to establish probable cause that Evans' use of force under the circumstances was unlawful. In other words, there was insufficient evidence presented by the State, based on a probable cause standard, to establish that Evans lacked a reasonable belief that deadly force was necessary to prevent imminent death or great bodily harm to himself.

VIEWING THE EVIDENCE IN THE SAME MANNER AS EVIDENCE AT A PRELIMINARY HEARING: THE LIGHT MOST FAVORABLE TO THE STATE

The majority finds that, based on this court's reasoning in *Hardy* (the only case to date that has addressed the process necessary to resolve immunity claims), the district judge was required to view the evidence in the light most favorable to the State and was not allowed to weigh the credibility of the evidence and witnesses. For the reasons I explain further below, I disagree with this approach. But assuming for the sake of argument that the majority is correct, I believe the State has still failed to meet its burden of production.

*The standard of proof is probable cause and our standard of review is de novo.*

In Kansas, standards of proof are seen as a continuum beginning with some evidence to support a finding (any evidence in the record to support a conclusion without examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence), followed by reasonable suspicion (a particularized and objective basis, more than a hunch, that a person is involved in criminal activity), then probable cause (evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt), preponderance of the

16

evidence (evidence that shows a fact is more probably true than not true), clear and convincing evidence (the truth of the facts presented is highly probable), and beyond a reasonable doubt (clearly defined by the words themselves). See *City of Wichita v. Molitor*, 301 Kan. 251, 257-58, 341 P.3d 1275 (2015) (reasonable suspicion); *In re B.D.-Y.*, 286 Kan. 686, 691, 696, 187 P.3d 594 (2008) (clear and convincing evidence and preponderance of the evidence); *State v. Wilson*, 281 Kan. 277, 287, 130 P.3d 48 (2006) (reasonable doubt); *Sammons v. Simmons*, 267 Kan. 155, 158, 976 P.2d 505 (1999) (some evidence); *State v. Bockert*, 257 Kan. 488, 492, 893 P.2d 832 (1995) (probable cause). We know that the standard of proof in this case is probable cause. *Ultreras*, 296 Kan. 828, Syl. ¶ 1. So I will discuss that standard in a bit more detail.

As the very name implies, the probable cause standard deals with probabilities. *Illinois v. Gates*, 462 U.S. 213, 231-32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (probable-cause standard incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances). In order to establish probable cause, there must be evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *Bockert*, 257 Kan. at 492. To put it in the context of this case, the State had the burden to prove that a reasonable person of ordinary prudence and caution could conscientiously entertain a reasonable belief that when Evans stabbed Pena, Evans did not have a reasonable belief that deadly force was necessary to prevent imminent death or great bodily harm to himself. See K.S.A. 2014 Supp. 21-5222(b).

As to our standard of review, because the case was submitted entirely on stipulated facts and resulted in a dismissal of charges, our review is unlimited. We are in no different position than the district court. See *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000) (an appellate court's review of an order discharging the defendant for lack of probable cause is de novo); *State v. Phelps*, 266 Kan. 185, 193, 967 P.2d 304 (1998) (appellate court conducts a de novo review of the evidence when considering the trial

17

court's preliminary hearing probable cause finding). Again, the majority here and in *Hardy* opined that when viewing the evidence, our role is the same as the district court: to view the evidence in the light most favorable to the State and, if there is any conflicting testimony, accept the version which is most favorable to the State. 51 Kan. App. 2d at 300.

*What does it mean to view the evidence in the light most favorable to the State?*

Viewing evidence in the light most favorable to the State does not mean completely disregarding all evidence that detracts from the State's position. It also does not require the elimination of all factual disputes as a matter of law. Instead, the totality of the circumstances must be considered. A defendant has the right to be present and to introduce evidence on his or her own behalf. K.S.A. 2014 Supp. 22-2902(3); see *State v. Jones*, 290 Kan. 373, 379, 228 P.3d 394 (2010). These rights imply that the defendant has a right to present a defense at the preliminary hearing, and this right has little meaning if the judge is not allowed to consider the evidence presented.

To this end, our Supreme Court has repeatedly stated that at a preliminary hearing, the judge not only has a duty to pass judgment on the credibility and competency of a witness but may consider evidence of a defense. *State v. Jones*, 233 Kan. 170, 174, 660 P.2d 965 (1983); see also *State v. Bell*, 259 Kan. 131, 133, 910 P.2d 205 (1996) (when evaluating evidence presented at a preliminary hearing, the judge must seriously consider the defendant's defense and pass judgment on the credibility and competency of both the State's and the defendant's witnesses). Even in *Ultreras*, the Supreme Court noted that "[e]vidence of justification . . . becomes a consideration in deciding whether the State has met that burden" to show that the defendant's actions were unlawful. 296 Kan. at 844.

18

Certainly, "[t]he question of the credibility of a witness at a preliminary examination must be approached with caution." *State v. Wilson*, 267 Kan. 530, 535, 986 P.2d 365 (1999). And generally, "[i]f there is a conflict in witness testimony that creates a question of fact for the jury, the [judge] must accept the version of the testimony which is most favorable to the State." *Bell*, 259 Kan. at 133. But if the doubts regarding a witness' credibility are so strong that they "obviate the appearance that [the defendant] probably committed the [crime] with which he was charged," discharge may be appropriate. *State v. Chapman*, 252 Kan. 606, 616, 847 P.2d 1247 (1993). Again, the issue is not whether there is "some" evidence to support the State's position but whether reasonable minds could differ regarding the evidence.

*Viewing the evidence in the light most favorable to the State, the State failed to meet its burden of production.*

In this case, viewing *only* the evidence that supports the State's position, the evidence is that Pena said he did not threaten to kill Evans, Pena said he never entered the garage to confront Evans, and Pena said he fended off two blows with the sword outside the garage before he was stabbed in the chest. But that does not mean we must disregard all other evidence. Clearly, there was *some* evidence that Evans was not threatened by Pena. But the standard of proof is not "some evidence" and, as already stated, it does not require that we *only* consider the State's evidence. Instead, when we examine the totality of the evidence, the undisputed evidence is that Pena somehow cut off Evans' air supply during their wrestling match and that Evans told Pena that he believed Pena was trying to kill him. Even after Evans forcefully expressed his concern to Pena, the physical evidence clearly supports a finding that Pena followed Evans into the garage and confronted him in the corner next to the door entering Evans' home. Evans was in a defensive posture with both hands on the sword he instinctively grabbed from nearby. Pena received no injuries on his arm from repeated blows as he claimed. Moreover,

19

Evans continued to tell one consistent story of what happened, while Pena's story varied in significant ways over the course of the investigation and preliminary hearing.

The doubts regarding Pena's credibility are so strong they preclude the conclusion that Evans acted unlawfully. The physical evidence is such that reasonable minds could not differ on the unlikelihood of the incident happening in the manner described by Pena, and Pena's testimony was the only evidence that supported the State's theory. Based on the totality of the evidence, the State clearly failed to meet its burden, and the district court did not err in finding that "probable cause did not exist to conclude that Defendant's use of force was unlawful."

VIEWING THE EVIDENCE IN THE SAME MANNER AS A MOTION TO SUPPRESS EVIDENCE: CONSIDERING AND WEIGHING ALL EVIDENCE WITH NO DEFERENCE TO ANY PARTY

As previously stated, because the statute and the Supreme Court have failed to provide guidance on the manner in which the district court is to consider the evidence of immunity, we are left to our own devices. The majority believes that the situation is analogous to a preliminary hearing. But there is merit to Evans' position that such an approach renders the statute meaningless as the State will always be able to present *some evidence* that the defendant failed to act justifiably, usually in the form of the victim's statement. This is certainly one reason to question whether the current standard is the correct one. It is presumed that the legislature does not intend to adopt useless or meaningless legislation. See *State v. Van Hoet*, 277 Kan. 815, 826, 89 P.3d 606 (2004).

Moreover, the majority concedes that if the district court was not required to view the conflicting evidence in a light favoring the State, there was sufficient evidence presented to the district court to support its finding that the State failed to establish probable cause that Evans' use of force was unlawful. In other words, the defendant's absolute immunity from prosecution in this case rests solely on whether the district court

20

is allowed to weigh conflicting evidence. This is the second reason that it is important to determine whether the standard used by the majority is the correct one.

*The difference between an affirmative defense and immunity*

First, a general review of the difference between the affirmative defense of self-defense and immunity from prosecution will highlight why the immunity determination must be treated differently.

An affirmative defense rests on the premise that certain actions are justified or warranted by the circumstances. When a defendant asserts an affirmative defense, it is assumed that the facts in the charging document are true. But if the defendant is able to establish that the affirmative defense is also factually true, he or she should be found not guilty. See *State v. McIver*, 257 Kan. 420, 431, 902 P.2d 982 (1995). At trial, once the defendant satisfies his or her burden of production to establish that competent evidence exists which "could allow a rational fact finder to reasonably conclude that the defense applies," the State has the burden to disprove the defense beyond a reasonable doubt. K.S.A. 2014 Supp. 21-5108(c). Examples of affirmative defenses include intoxication, compulsion, entrapment, involuntary intoxication, ignorance or mistake, and self-defense. K.S.A. 2014 Supp. 21-5205 (intoxication); K.S.A. 2014 Supp. 21-5206 (compulsion); K.S.A. 2014 Supp. 21-5207 (ignorance or mistake); K.S.A. 2014 Supp. 21-5208 (entrapment); K.S.A. 2014 Supp. 21-5222 (self-defense). But at the preliminary hearing stage, the State simply has the burden to establish probable cause that a crime has been committed and that the defendant committed it. Even though a defendant has a right to present a defense, the burden remains with the prosecution to establish that there is probable cause to believe a crime has been committed. As the court noted in *Hardy*, "[i]n at least some cases involving the use of force, the State could make an evidentiary showing of probable cause without addressing possible self-defense." 51 Kan. App. 2d at 306.

21

But because the purpose of the preliminary hearing is not to establish guilt or innocence beyond a reasonable doubt, when evidence conflicts or raises any doubt, the case is allowed to proceed to jury trial for the ultimate determination. See *Jones*, 233 Kan. at 173. "Evidence of justification simply becomes a consideration in deciding whether the State has met that burden"—to show that the defendant's actions were unlawful. *Ultreras*, 296 Kan. at 844. Thus, the courts view the evidence in the light most favorable to the prosecution to encourage the submission of the case to the jury to sort out factual conflicts. This is the process the majority and the *Hardy* panel believe is appropriate for immunity hearings.

On the other hand, immunity, as defined by Black's Law Dictionary 867 (10th ed. 2014), is "[a]ny exemption from a duty, liability, or service of process." Recent legislation in Kansas and elsewhere, known as "stand your ground" legislation, has included grants of immunity to defendants who are justified in using force. Without probable cause to believe that unlawful force was used, arrest and prosecution is prohibited. K.S.A. 2014 Supp. 21-5231(b). Self-defense and immunity are clearly distinct concepts. If immunity were the same as self-defense, there would have been no need to adopt a specific immunity statute because K.S.A. 2014 Supp. 21-5222 would have sufficed. Perhaps most importantly, because K.S.A. 2014 Supp. 21-5231 grants immunity from arrest and prosecution rather than a mere defense to liability, "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

In determining how the court should examine the evidence when presented with a claim for immunity, it may be helpful to also examine how a police officer is statutorily required to examine the evidence in such a case prior to making an arrest. Law enforcement has two decision points when the immunity statute is implicated. First, is there probable cause to believe the person used force against another? And second, is there probable cause to believe that the use of force was unlawful in light of a claim of

22

self-defense? Under the stand your ground immunity statute, an "agency shall not arrest the person for using force unless it determines that there is probable cause for the arrest." K.S.A. 2014 Supp. 21-5231(b). The law enforcement officer is directed to use standard investigation techniques to make this determination. K.S.A. 2014 Supp. 21-5231(b). There is no presumption that the force used was unlawful, and law enforcement is not required to view the evidence in the light most likely to result in charging the perpetrator. The officer is instead clearly required to consider and weigh all the evidence before deciding whether immunity exists.

Likewise, and before even filing charges, a prosecutor must consider two things: first, whether there is probable cause to believe a person used force against another; and second, whether there was probable cause to believe that the use of force was unlawful in light of the actor's ability to assert "stand your ground" immunity under the statute. K.S.A. 2014 Supp. 21-5231(c). Again, there is no presumption that the force used was unlawful, and the prosecutor is not required to evaluate the evidence in the light most likely to result in charging the person. Instead, the prosecutor is clearly required to consider and weigh all the evidence in making a determination of whether the potential defendant used force without the requisite legal justification.

Although at first blush this would seem to be identical to the charging decision a prosecutor makes in every case, it is decidedly different. A prosecutor must rebut a claim of statutory immunity before the case can go to trial. This procedure differs from when a defendant raises an affirmative defense. As the court in *Hardy* noted, "[i]n at least some cases involving the use of force, the State could make an evidentiary showing of probable cause without addressing possible self-defense. A motion for self-defense immunity necessarily requires the State to deal directly with the issue. [Citation omitted.]" *Hardy*, 51 Kan. App. 2d at 306. In *Ultreras*, the Supreme Court noted that this two-step approach is what gives the statute meaning and makes it distinct from an affirmative defense.

23

"[O]nce a defendant raises justified use-of-force immunity before a court, a probable cause determination must also include a determination that the defendant's use of force was not justified under K.S.A. 21-3211, K.S.A. 21-3212, or K.S.A. 21-3213. Hence, the statute as written with a probable cause standard adds an *additional* requirement and is meaningful." (Emphasis added.) 296 Kan. at 844.

At least two other courts have recognized the distinction between an affirmative defense and immunity. "[I]mmunity represents a far greater right than any encompassed by an affirmative defense, which may be asserted during trial but cannot stop a trial altogether." *Bunn v. State*, 284 Ga. 410, 413, 667 S.E.2d 605 (2008); see also *State v. Duncan*, 392 S.C. 404, 410, 709 S.E.2d 662 (2011) ("by using the words 'immune from criminal prosecution,' the legislature intended to create a true immunity, and not simply an affirmative defense").

In *State v. Farmer*, 259 Kan. 157, 161, 909 P.2d 1154 (1996), our Supreme Court opined:

"The function of a judge or magistrate at a preliminary hearing is not to determine the wisdom of the prosecuting attorney's decision to file and pursue charges against the defendant. Nor is it the function of the judge to conclude that there should be no prosecution because the possibility of a conviction may be remote or virtually nonexistent."

But I submit that is exactly the function of the judge when determining the existence of statutory immunity. The *Hardy* panel and the majority express concern that by weighing the credibility of witnesses "a district court would otherwise usurp" the role of the jury. 51 Kan. App. 2d at 301. But that is exactly what a determination of immunity is supposed to do—avoid a trial altogether.

24

*Immunity should be determined by a neutral judge weighing conflicting evidence and making clear findings of fact, subject to appellate review.*

The statute clearly authorizes the immunity determination to be made by law enforcement officers, prosecutors, and judges. If law enforcement officers and prosecutors are allowed to consider and weigh all the evidence in making their determination, short-circuiting the criminal case at any point along the way, why not judges? Rather than viewing the immunity hearing as similar to a preliminary hearing, the purpose of the statute—immunity from prosecution—would be fully realized if that hearing was conducted in the same manner as a one for a motion to suppress.

On a motion to suppress evidence, the State must prove the lawfulness of the search and seizure, albeit by a preponderance of the evidence rather than probable cause. See *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). The judge receives evidence on any issue of fact necessary to determine the motion. K.S.A. 22-3216(2). Where the material facts are not in dispute, the ultimate determination of suppression is a question of law over which this court has unlimited review. *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). However, when material facts are in dispute, the district court makes factual findings and credibility determinations, and the appellate court does not reweigh those determinations on appeal. *State v. Lemons*, 37 Kan. App. 2d 641, 644-45, 155 P.3d 732 (2007). Instead, the district court's factual findings on a motion to suppress are reviewed for substantial competent evidence, but the legal conclusions to be drawn from the evidence are reviewed de novo. *State v. Estrada-Vital*, No. 107,324, 2015 WL 4965895, at *5 (Kan. 2015). And the appellate courts generally give great deference to the factual findings of the trial court. *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995). This should be our standard of review in the case of an immunity determination.

Just as in the case of a motion to suppress, a decision on immunity may result in the case never reaching the jury. But as previously indicated, if the case is erroneously

permitted to go to trial, the statutory right to immunity is lost. See *Mitchell*, 472 U.S. at 526. To be consistent with the rights set forth in the statute, the judge must be able to consider and weigh the evidence as a whole, with no deference to the prosecution's position. At least one state with a similar statute has concluded that the question of whether the defendant is immune from prosecution must be determined by the trial court, before trial, *as a matter of law*. See *Fair v. State*, 284 Ga. 165, 166, 664 S.E.2d 227 (2008) (citing with approval *Boggs v. State*, 261 Ga. App. 104, 106, 581 S.E.2d 722 [2003]); see also *People v. Hartwick*, 498 Mich. 192, ___N.W.2d ___, 2015 WL 4527987, at *1 (2015) (immunity from prosecution is a question of law with the court necessarily resolving factual disputes).

In this case, District Judge Ryan clearly set forth detailed findings after examining all the evidence presented to him. As the majority concedes, his decision was supported by substantial competent evidence, and his conclusion that the State had failed to meet its burden of proof was legally correct.

Accordingly, I would affirm the district court's dismissal of the charges in this case.